**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT UNDER BANKRUPTCY CODE SECTION 1125(b) FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE PLAN DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS DISCLOSURE STATEMENT IS NOT INTENDED AND SHOULD NOT BE CONSTRUED AS A SOLICITATION OF ACCEPTANCES OF SUCH PLAN. THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1125(a).[1]**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ~~In re:~~ | ) ~~Chapter 11~~ |
| | ) |
| ~~HMP SERVICES HOLDING, INC.,~~ | ) ~~Case No. 10-____~~ |
| ~~Debtor.~~ | ) |
| | ) ~~(Joint Administration Requested)~~ |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| HMP SERVICES HOLDING SUB III, LLC, et al.[2] | ) Case No. ~~10-____~~ 10-13618 (BLS) |
| ~~Debtors.~~ | ) |
| | ) Jointly Administered |
| ~~Debtor.~~ | ) |

## DISCLOSURE STATEMENT IN SUPPORT OF THE ~~DEBTORS' JOINT PLAN OF LIQUIDATION UNDER~~
## DEBTORS' FIRST MODIFIED JOINT PLAN OF LIQUIDATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

Dated: ~~November 8~~ January 18, ~~2010~~ 2011

**BROWN RUDNICK LLP**                **SAUL EWING LLP**

---

[1] Legend to be removed upon entry by the Clerk of the Bankruptcy Court of an order of the Bankruptcy Court approving this Disclosure Statement.

[2] ~~The Debtors and the last four digits of their respective taxpayer identification numbers are: (i) HMP Services Holding Sub III, LLC f/k/a Charrette LLC (3196) and (ii) HMP Services Holding, Inc. f/k/a Harold M. Pitman Company (0980). HMP Services Holding Sub III, LLC is a Delaware limited liability company.~~

[2] The Debtors and the last four digits of their respective taxpayer identification numbers are: (i) HMP Services Holding Sub III, LLC f/k/a Charrette LLC (3196) and (ii) HMP Services Holding, Inc. f/k/a Harold M. Pitman Company (0980). HMP Services Holding Sub III, LLC is a Delaware limited liability company.

Proposed Co-Counsel to the Debtors and the
Debtors-in-Possession
William R. Baldiga, Esq.
Lisa M. Kresge, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201

Proposed Co-Counsel to the Debtors and the
Debtors-in-Possession
Mark Minuti, Esq. (DE Bar No. 2659)
Lucian B. Murley, Esq. (DE Bar No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6840
Facsimile: (302) 421-5873

-and-

~~MaryJo Bellew, Esq. (DE Bar No. 4519)~~
~~Centre Square West~~
~~1500 Market Street, 38th Floor~~
~~Philadelphia, PA 19102~~
~~Telephone: (215) 972-7144~~
~~Facsimile: (215) 972-2292~~

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1
I.      NOTICE TO HOLDER OF CLAIMS AND INTERESTS .........................................2
II.     EXPLANATION OF CHAPTER 11 ...................................................................~~3~~4
        A.      Overview of Chapter 11.......................................................................4
        B.      Chapter 11 Plan ..................................................................................4
        C.      Confirmation of a Chapter 11 Plan .........................................................5
III.    OVERVIEW OF THE PLAN ..........................................................................6
        A.      Summary of the Terms of the Plan ........................................................6
        B.      Summary of Distributions Under the Plan................................................7
IV.     GENERAL INFORMATION ........................................................................10
        A.      History and Overview of the Debtors' Business........................................10
        B.      Debtors' Corporate and Capital Structures ............................................11
        C.      Events Leading to the Commencement of the Case Under Chapter 11 ....................12
V.      THE CHAPTER 11 CASES..........................................................................13
        A.      Commencement of the Chapter 11 Cases ................................................13
        B.      Continuance of Administrative Operations After the Petition Date .........................13
                i.      Joint Administration.....................................................................~~13~~14
                ii.     Consolidated List of Creditors ........................................................14
                iii.    Retention of Professionals and Appointment of Officers ...............................14
                iv.     Interim Compensation.....................................................................14
                v.      Cash Collateral Stipulation, Existing Bank Accounts and Business
                        Forms ......................................................................................14
        C.      Administration of These Chapter 11 Cases .............................................15
        ~~C~~D.      Matters Relating to Unexpired Leases and Executory Contracts ......................15
~~D~~        E.      Exclusivity Periods ......................................................................~~15~~16
        ~~E~~F.      Schedules, Bar Dates and Claims Objections............................................~~15~~16
VI.     THE CHAPTER 11 PLAN...........................................................................16
        A.      Classification and Treatment of Claims and Interests .................................~~16~~17
                i.      Administrative Claims and Priority Claims...............................................~~16~~17
                        1.      Administrative Claims.......................................................17
                        2.      Priority Claims.............................................................18
                ii.     Debtor Claims and Interests..............................................................18
        B.      Means for Execution and Implementation of the Plan ~~19~~ the Litigation Trust ....19
                i.      Litigation Trust ..........................................................................19
~~i.Liquidating Trust19~~
                ii.     Transfers to the ~~Liquidating~~ Litigation Trust....................................~~19~~20
                iii.    ~~Preferences~~ Third Party Claims, Avoidance Claims, Commercial Tort
                        Claims and other Recoveries ......................................................~~19~~20
                iv.     Liquidation of Assets ...................................................................20
        C.      ~~Liquidating~~ Litigation Trustee ...........................................................20
                i.      Authority of the ~~Liquidating~~ Litigation Trustee ...............................20
                ii.     Compensation of ~~Liquidating~~ Litigation Trustee................................~~20~~21
                iii.    Authorization, Empowerment, Rights and Duties of ~~Liquidating~~Litigation
                        Trustee..................................................................................~~20~~21

|  | iv. | Participation by the ~~Liquidating~~ Litigation Trustee | 21̶23 |
|  | v. | Investments of Cash Pending Distributions | 22̶23 |
|  | vi. | Limitation of Liability of the ~~Liquidating~~ Litigation Trustee | 22̶23 |
|  | vii. | Certain Records | 23̶24 |
|  | viii. | Termination of the ~~Liquidating~~ Litigation Trust and ~~Liquidating~~ Litigation Trustee | 23̶24 |
| D. | | Means for Execution and Implementation of the Plan – the Plan Trust | 24 |
|  | i. | Plan Trust | 24 |
|  | ii. | Transfers to the Plan Trust | 24 |
|  | iii. | Liquidation of Assets | 24 |
| E. | | Plan Trustee | 25 |
|  | i. | Authority of the Plan Trustee | 25 |
|  | ii. | Compensation of Plan Trustee | 25 |
|  | iii. | Authorization, Empowerment, Rights and Duties of Plan Trustee | 25 |
|  | iv. | Participation by the Plan Trustee | 26 |
|  | v. | Investments of Cash Pending Distributions | 26 |
|  | vi. | Limitation of Liability of the Plan Trustee | 26 |
|  | vii. | Certain Records | 27 |
|  | viii. | Termination of the Plan Trust and Plan Trustee | 27 |
| ~~D~~F. | | Plan Distribution Provisions | 23̶27 |
|  | i. | Distributions to ~~Liquidating~~ Litigation Trustee 23̶and Plan Trustee | 27 |
|  | ii. | Distributions | 23̶28 |
|  | iii. | Rounding of Payments | 24̶29 |
|  | iv. | Compliance with Tax Requirements | 24̶29 |
|  | v. | Undeliverable Distributions, Voided Checks and Distribution of Unclaimed Property | 24̶30 |
|  | vi. | Setoff | 25̶31 |
| ~~E~~G. | | Procedures for Resolving Objections to Claims | 25̶31 |
|  | i. | Objections to Claims | 25̶31 |
|  | ii. | Treatment of Disputed Claims | 26̶31 |
|  | iii. | Administrative Claims | 26̶32 |
|  | iv. | Professional Fee Claims | 26̶32 |
|  | v. | Subordinated Claims | 32 |
| ~~F~~H. | | Effects of Plan Confirmation | 26̶32 |
|  | i. | Binding Effect of Confirmation | 26̶32 |
|  | ii. | Good Faith | 27̶32 |
|  | iii. | Injunction | 27̶32 |
|  | iv. | Exculpation and Limitation of Liabilities | 27̶33 |
|  | v. | Release of Lender by Debtors ~~and Liquidating~~, Litigation Trustee 28̶and Plan Trustee 33 |
| ~~G~~I. | | Conditions to Effectiveness | 28̶33 |
|  | i. | Conditions Precedent to Plan ~~Consummation28~~Effectiveness | 33 |
|  | ii. | Waiver of Conditions | 28̶34 |
| ~~H~~J. | | Retention of Jurisdiction | 28̶34 |
| ~~I~~K. | | Modification or Withdrawal of Plan | 30̶35 |
|  | i. | Modification of Plan | 30̶35 |

|  |  | ii. | Withdrawal of Plan | 3036 |
| | J̶L. | | Other Material Provisions of the Plan | 3036 |
| | | i. | Resignation of Officers and Directors and Dissolution of Debtors | 3036 |
| | | ii. | Rejection and Assumption of Contracts | 3136 |
| | | iii. | Governing Law | 3136 |
| | | iv. | Successors and Assigns | 3137 |
| | | v. | Severability of Plan Provisions | 3137 |
| | | vi. | No Waiver | 3137 |
| | | vii. | Payment of Post-Petition Interest and Attorneys' Fees | 3237 |
| | | viii. | Post-Effective Date Fees and Expenses | 3237 |
| | | ix. | Final Decree and Case Closure | 3238 |
| | | x. | Post-Effective Date Effect of Evidences of Claims or Interests | 3238 |
| **VII.** | | | **RISK FACTORS** | **3338** |
| | A. | | General Considerations | 3339 |
| | B. | | Termination Rights Under Plan Support Agreement | 3339 |
| | C. | | Certain Bankruptcy Considerations | 3439 |
| | D. | | Claims Estimations | 3440 |
| **VIII.** | | | **CONFIRMATION AND CONSUMMATION PROCEDURES** | **3440** |
| | A. | | Overview | 3440 |
| | B. | | Confirmation of the Plan | 3641 |
| | | i. | Elements of Bankruptcy Code Section 1129 | 3641 |
| | | ii. | Acceptance | 3743 |
| | | iii. | Best Interests Test | 3743 |
| | | iv. | Feasibility | 3944 |
| | C. | | Cramdown | 3944 |
| | | i. | No Unfair Discrimination | 3945 |
| | | ii. | Fair and Equitable Test | 3945 |
| | D. | | Effect of Confirmation | 4045 |
| **IX.** | | | **INCOME TAX CONSIDERATIONS** | **4046** |
| **X.** | | | **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN** | **4046** |
| | A. | | Liquidation Under Chapter 7 of the Bankruptcy Code | 4046 |
| | B. | | Alternative Plans | 4146 |
| **XI.** | | | **CONCLUSION** | **48** |
| ~~**XI.**~~ | | | ~~**CONCLUSION**~~ | ~~42~~ |

| Exhibit A | Debtors' Joint Plan of Liquidation |
| Exhibit B | Disclosure Statement Order |
| Exhibit C | Glossary of Defined Terms |

## TABLE OF EXHIBITS

| Exhibit | Name |
| --- | --- |
| A | Debtors' Joint Plan of Liquidation |
| B | Disclosure Statement Order |
| C | Glossary of Defined Terms |

# INTRODUCTION

THE BANKRUPTCY COURT HAS NOT APPROVED THE DISCLOSURE STATEMENT RELATING TO THE FIRST MODIFIED JOINT PLAN OF LIQUIDATION FOR HMP SERVICES HOLDING SUB III, LLC AND HMP SERVICES HOLDING, INC. (THE "DEBTORS" OR THE "COMPANY") UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED NOVEMBER 8JANUARY 18, 2010 2011 (THE "PLAN"). THE DISCLOSURE STATEMENT INCLUDES AND DESCRIBES THE PLAN, A COPY OF WHICH IS ATTACHED HERETO AS **EXHIBIT A**. CLASS 1 – LENDER SECURED CLAIM, CLASS 2 – LENDER DEFICIENCY CLAIM AND CLASS 3 – GENERAL UNSECURED CLAIMS ARE IMPAIRED UNDER THE PLAN AND THUS ARE ENTITLED TO VOTE ON THE PLAN. CLASS 4 – INTERESTS AND SUBORDINATED EQUITY CLAIMS ARE UNIMPAIRED UNDER THE PLAN AND ARE THEREFORE DEEMED TO HAVE ACCEPTED THE PLAN. ACCORDINGLY, THE DEBTORS ARE NOT SOLICITING ACCEPTANCES OF THE PLAN FROM THE FOREGOING UNIMPAIRED CLAIMS AND INTERESTS. THE DEBTORS ARE SOLICITING ACCEPTANCES OF THE PLAN FROM HOLDERS OF CLAIMS IN CLASS 1 – LENDER SECURED CLAIM, CLASS 2 – LENDER DEFICIENCY CLAIM AND CLASS 3 – GENERAL UNSECURED CLAIMS.

AS EXPLAINED BELOW IN GREATER DETAIL, THE LENDER, AS THE HOLDER OF THE CLASS 1 – LENDER SECURED CLAIM AND THE CLASS 2 – LENDER DEFICIENCY CLAIM, ALREADY HAS AGREED TO VOTE TO ACCEPT THE PLAN, SUBJECT TO THE TERMS OF THE PLAN SUPPORT AGREEMENT.

THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTEREST OF, AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO HOLDERS OF, ALL CLAIMS AND INTERESTS. ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE URGED TO VOTE IN FAVOR OF THE PLAN.

VOTING INSTRUCTIONS AND BALLOTS SHALL BE CONTAINED IN THE DISCLOSURE STATEMENT ORDER TO BE ATTACHED HERETO AS **EXHIBIT B**. IN ADDITION, THE SOLICITATION PACKAGE ACCOMPANYING EACH OF THE BALLOTS WILL CONTAIN APPLICABLE VOTING INSTRUCTIONS. **THE VOTING INSTRUCTIONS WILL SPECIFY THE VOTING DEADLINE BY WHICH THE BALLOT MUST BE COMPLETED AND RECEIVED BY THE SOLICITATION AGENT.**

**All capitalized terms used in the Disclosure Statement and not defined herein shall have the meanings ascribed thereto in the Plan (see Exhibit A to the Plan, Glossary of Defined Terms). For ease of reference, all defined terms used in the Disclosure Statement are listed on Exhibit C attached hereto. Unless otherwise stated, all references herein to "Exhibits" are references to exhibits to this Disclosure Statement.**

## I. NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

The purpose of this Disclosure Statement is to enable you, as a creditor whose Claim is impaired under the Plan or as an equityholder whose Interest is impaired under the Plan, to make an informed decision in exercising your right to accept or reject the Plan. See "Confirmation and Consummation Procedures."

THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE PLAN AND TO THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF. IN THE EVENT OF ANY CONFLICT BETWEEN THE DESCRIPTION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL GOVERN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND BANKRUPTCY RULE 3016(b) AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SEC, NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS.

The Debtors will make a motion for a disclosure statement hearing and for an order pursuant to Bankruptcy Code Section 1125, finding that the Disclosure Statement contains information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of the solicited classes of Claims and Interests of the Debtors to make an informed judgment with respect to the acceptance or rejection of the Plan. **APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPCY COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.**

Each holder of a Claim or Interest entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and Bankruptcy Code Section 1125. Except for the Debtors and certain of the professionals they have retained, no Person has been authorized to use or promulgate any information concerning the Debtors, their businesses or the Plan other than the information contained in this Disclosure Statement and, if given or made, such information may not be relied upon as having been authorized by the Debtors. **You should not rely on any information relating to the Debtors, their businesses or the Plan other than that contained in this Disclosure Statement and the Exhibits hereto.**

After carefully reviewing this Disclosure Statement, including the attached Exhibits, please indicate your acceptance or rejection of the Plan by voting in favor or against the Plan on the ballot that will be enclosed and return the same to the address as set forth on the ballot, in the enclosed, postage prepaid, return envelope so that it will be actually received by [TO BE DETERMINED] EPIQ Bankruptcy Solutions, LLC (the "Solicitation Agent"), no later than the Voting Deadline. All votes to accept or reject the Plan must be cast by using the appropriate ballot. Votes which are cast in any other manner will not be counted. All ballots must be actually received by the Solicitation Agent at a time which will be specified in the Disclosure Statement Order. **For detailed voting instructions and the name, address and phone number of the Person you may contact if you have questions regarding the voting procedures, see the Disclosure Statement Order which will be attached hereto as Exhibit B.**

**DO NOT RETURN ANY OTHER DOCUMENTS WITH YOUR BALLOT.**

You will be bound by the Plan if it is accepted by the requisite holders of Claims and Interests and confirmed by the Bankruptcy Court, even if you do not vote to accept the Plan or if you are the holder of an unimpaired Claim. See "Confirmation and Consummation Procedures."

**The Debtor will make a motion for the Bankruptcy Court to schedule the Confirmation Hearing.**

**THE DEBTORS URGE ALL HOLDERS OF IMPAIRED CLAIMS AND INTERESTS TO ACCEPT THE PLAN.**

## II.     **EXPLANATION OF CHAPTER 11**

A.     Overview of Chapter 11

The Debtors commenced these Cases with the filing by the Debtors of petitions for voluntary protection under chapter 11 of the Bankruptcy Code on the Petition Date. Concurrently with the commencement of these Cases, the Debtors filed a motion for joint administration of the Cases.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor-in-possession as of the date the petition is filed. Bankruptcy Code Sections 1101, 1107 and 1108 provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession" unless the bankruptcy court orders the appointment of a trustee. In these Cases, each Debtor remains in possession of its property and continues to operate its businesses as a debtor-in-possession. See "The Chapter 11 Cases – Continuation of Administrative Operations After the Petition Date."

The filing of a chapter 11 petition triggers the automatic stay provisions of the Bankruptcy Code. Bankruptcy Code Section 362 provides, among other things, for an automatic stay of all attempts by creditors or other third parties to collect pre-petition claims from the debtor or otherwise interfere with its property or business. Exempted from the automatic stay are governmental authorities seeking to exercise regulatory or policing powers. Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the holders of claims against and interests in the debtor's estate. Unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a chapter 11 case (the "Filing Period"), and the debtor will have 180 days to solicit acceptance of such plan (the "Solicitation Period"). However, Bankruptcy Code Section 1121(d) permits the bankruptcy court to extend or reduce the Filing Period and Solicitation Period upon a showing of "cause." The Filing Period and Solicitation Period may not be extended beyond 18 months and 20 months, respectively, from the Petition Date. As the Debtors filed the Plan during the Filing Period, no other creditor or party in interest may file a plan until the expiration of the Solicitation Period. See "The Chapter 11 Cases — Exclusivity Periods."

B.     Chapter 11 Plan

A plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors and equityholders, and the prior obligations owed by the debtor to such parties are compromised and exchanged for the obligations specified in the plan. For a description of key components of the Plan, see "Overview of the Plan," below.

After a chapter 11 plan has been filed, the holders of impaired claims against and equity

4

interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, Bankruptcy Code Section 1125 requires the debtor to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical, reasonable investor to make an informed judgment about the plan. **This Disclosure Statement is presented to holders of Claims against and Interests in the Debtors to satisfy the requirements of Bankruptcy Code Section 1125 in connection with the Debtors' solicitation of votes on the Plan.**

C.    Confirmation of a Chapter 11 Plan

If all classes of claims and equity interests accept a plan of reorganization, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of Bankruptcy Code Section 1129(a) have been satisfied. See "Confirmation and Consummation Procedures — Confirmation of the Plan." **The Debtors believe that the Plan satisfies all the applicable requirements of Bankruptcy Code Section 1129(a).**

Chapter 11 of the Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization for the bankruptcy court to determine that the class has accepted the plan. See "Confirmation and Consummation Procedures."

In addition, classes of claims or equity interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. See "Confirmation and Consummation Procedures." Accordingly, acceptances of a plan will generally be solicited only from those Persons who hold claims or equity interests in an impaired class. **Class 1 – Lender Secured Claim, Class 2 – Lender Deficiency Claim and Class 3 – General Unsecured Claims are impaired under the Plan and thus are entitled to vote on the Plan. Class 4 – Interests and Subordinated Equity Claims are unimpaired under the Plan and are therefore deemed to have accepted the Plan.**

In general, a bankruptcy court also may confirm a chapter 11 plan even though fewer than all the classes of impaired claims against and equity interests in a debtor accept such plan. For a plan to be confirmed, despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan. See "Confirmation and Consummation Procedures — Cramdown." **The Plan has been structured so that it will satisfy the foregoing requirements for each of the Debtors as to any rejecting class of Claims or Interests, and can therefore be confirmed, if necessary, over the objection of any (but not all) classes of Claims or Interests.**

The Debtors negotiated the terms of the Plan with the Lender. As a result of such negotiations, the Lender entered into the Plan Support Agreement, pursuant to which, among other things, the Lender agreed, subject to the terms of the Plan Support Agreement, to vote to accept the Plan.

# III.   OVERVIEW OF THE PLAN

The Plan provides for the treatment of Claims against and Interests in all of the Debtors.

A.   Summary of the Terms of the Plan

The Plan is built around the following key elements:

- The Debtors will liquidate their remaining assets for the benefit of creditors.

- As set forth in Paragraph 7.1 of the Plan, pursuant to Bankruptcy Rule 9019, the Plan incorporates a proposed compromise and settlement of all issues or controversies relating to the Lender Claim, including as to the amount of the Lender Claim, the validity, priority and perfection of the Lender's lien on and security interest in certain of the Debtors' assets, the classification of the Lender Claim and the method of satisfying the Lender Secured Claim and the Lender Deficiency Claim. As of the Effective Date, the Lender Claim shall be deemed Allowed in the amount of $~~4,328,953.43~~3,828,953.43. For the avoidance of doubt, upon the Effective Date, the Lender shall be entitled only to distributions as specified under the Plan in full and final satisfaction of the Lender Claim and waives any and all other Claims against the Debtors and any subsidiary or affiliate thereto, including, but not limited to, any and all additional amounts that may be due and owing under the Credit Agreement and any ancillary documents thereto.

- As set forth in Paragraph 7.2 of the Plan, in full and final satisfaction of the Lender Secured Claim, Lender shall be entitled to receive Cash proceeds~~—~~, provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan, from the following, to the extent not otherwise previously distributed to the Lender, within five (5) Business Days of the ~~Liquidating~~ Plan Trustee's receipt, unless distributed earlier during the pendency of the Case pursuant to an order of the Bankruptcy Court: (i) eighty percent (80%) of the Tax Refund; (ii) the first $750,000 of the APA Holdback Amount to the extent such funds are released to the Debtors pursuant to the terms of the APA and Escrow Agreement; (iii) twenty percent (20%) of any portion of the APA Holdback Amount in excess of the first $750,000 that may be received to the extent such funds are released to the Debtors pursuant to the terms of the APA and Escrow Agreement; (iv) fifty percent (50%) of the first $1.2 million of the Health Insurance Overage Amount to the extent such funds become available; and (v) one hundred percent (100%) of any portion of the Health Insurance Overage Amount in excess of $1.2 million to the extent such funds become available~~; and (vi) eighty percent (80%) of the Miscellaneous Collateral Proceeds. Notwithstanding anything to the contrary in the Plan, the first $100,000 from the Cash proceeds.~~ For the avoidance of doubt, any and all distributions to Lender on account of its Class 1 and 2 Claims described in Paragraphs 7.2 and 7.3 of the Plan shall ~~be retained by the Estate for the benefit of holders of Class 3 Claims. For purposes of proviso (vi) of~~

~~Paragraph 7.2 of the Plan, unless agreed to by and between Lender and the Debtors or the Liquidating Trustee, as the case may be, the Bankruptcy Court shall determine whether such proceeds constitute proceeds from the liquidation of Collateral~~not exceed $3,828,953.43 in the aggregate.

- As set forth in Paragraph 7.3 of the Plan, as of the Effective Date, the Lender Deficiency Claim shall be deemed Allowed in an amount equal to the amount of the Lender Claim, less proceeds received pursuant to Paragraph 7.2 of the Plan. In full and final satisfaction of the Lender Deficiency Claim, Lender shall be entitled to receive Cash proceeds~~,~~ provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan, from the following: (i) Cash in the amount of $450,000 (the "Lender Reserve Amount") on the Effective Date from the Disputed Cash Collateral Account; ~~and~~ (ii) twenty percent (20%) of Cash proceeds, if any, from or as a result of ~~any proceeding, settlement, award, release or negotiation relative to any actual or potential cause of action in connection with a Commercial Tort Claim or Avoidance Claim against any Person, or~~ (a) any insurance policies insuring against business losses or crimes~~,~~ (b) any and all wine actually recovered from Mr. John Eichner in connection with the Information and Plea and (c) the forfeiture of $143,458 by Mr. John Eichner pursuant to the Information and Plea, within ten (10) Business Days of the ~~Liquidating Trustee's receipt of such proceeds; and (iii) twenty percent (20%) of the Miscellaneous Non-Collateral Proceeds, within ten (10) Business Days of the Liquidating Litigation~~ Trustee's receipt of such proceeds. ~~For purposes of proviso (iii) of~~ Notwithstanding anything to the contrary in the Plan, the first $100,000 from the Cash proceeds described in Paragraph 7.3 of the Plan, ~~unless agreed to by and between Lender and the Debtors or the Liquidating Trustee, as the case may be, the Bankruptcy Court~~ shall ~~determine whether such proceeds constitute proceeds from the liquidation of Non-Collateral~~be retained by the Estate for the benefit of holders of Class 3 Claims. For the avoidance of doubt, any and all distributions to Lender on account of its Class 1 and 2 Claims described in Paragraphs 7.2 and 7.3 of the Plan shall not exceed $3,828,953.43 in the aggregate.

- As set forth in Paragraph 7.4 of the Plan, each holder of an Allowed General Unsecured Claim shall be entitled to Cash in the amount of the Non-Lender Proceeds, on a Pro Rata basis, on the next available Plan Distribution Date, provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan.

## B. Summary of Distributions Under the Plan

The following is a summary of the distributions under the Plan. It is qualified in its entirety by reference to the full text of the Plan, which is attached to this Disclosure Statement as **Exhibit A**. In addition, for a more detailed description of the terms and provisions of the Plan, see "The Chapter 11 Plan," below.

The following chart summarizes the estimated Plan distributions to each class on the Plan

Distribution Date (unless otherwise provided):

## Administrative and Priority Claims[3]

| Classes of Claims[4] | Treatment of Classes of Claims |
|---|---|
| Administrative Claims | Each Allowed Administrative Claim shall, at the sole option of the Debtors or the Litigation Trustee, as the case may be, receive (i) on the Plan Distribution Date, the amount of such Allowed Claim in Cash, (ii) with respect to Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtors, payment when and as such Administrative Claims become due and owing by their ordinary course terms or (iii) such other treatment as may be agreed upon in writing by the Debtors or the ~~Liquidating~~ Litigation Trustee, as the case may be, and the holder of such Claim; provided, however, that such treatment shall not provide to the holder of such Claim a return having a present value as of the Effective Date in excess of such Allowed Administrative Claim. If a portion of an Administrative Claim is disputed, the undisputed portion of such Administrative Claim shall be timely paid as provided above. |
| Priority Claims | Each Person holding an Allowed Priority Claim shall be paid in Cash in full (subject to any applicable cap under Bankruptcy Code Section 507(a)) on the Plan Distribution Date. |

## Classified Claims and Interests

| Classes of Claims[5] | Treatment of Classes of Claims |
|---|---|

---

[3] As provided by Bankruptcy Code Section 1123(a)(1), Administrative Claims and Priority Claims shall not be classified under the Plan. Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of Bankruptcy Code Sections 1123, 1124, 1125, 1126 or 1129.

[4] ~~The amounts set forth herein are the Debtors' estimates based on the Debtors' books and records. Any applicable bar dates have not yet occurred. Actual amounts will depend upon the amounts of Claims timely filed before any applicable bar dates, final reconciliation and resolution of all Claims and the negotiation of damage claims. Accordingly, the actual amounts may vary significantly from the amounts set forth herein.~~

[5] ~~See footnote 4.~~

| Class 1 – Lender Secured Claim | As set forth in Paragraph 7.2 of the Plan, in full and final satisfaction of the Lender Secured Claim, Lender shall be entitled to receive Cash proceeds~~,~~ provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan, from the following, to the extent not otherwise previously distributed to the Lender, within five (5) Business Days of the ~~Liquidating~~ Plan Trustee's receipt, unless distributed earlier during the pendency of the Case pursuant to an order of the Bankruptcy Court: (i) eighty percent (80%) of the Tax Refund; (ii) the first $750,000 of the APA Holdback Amount to the extent such funds are released to the Debtors pursuant to the terms of the APA and Escrow Agreement; (iii) twenty percent (20%) of any portion of the APA Holdback Amount in excess of the first $750,000 that may be received to the extent such funds are released to the Debtors pursuant to the terms of the APA and Escrow Agreement; (iv) fifty percent (50%) of the first $1.2 million of the Health Insurance Overage Amount to the extent such funds become available; and (v) one hundred percent (100%) of any portion of the Health Insurance Overage Amount in excess of $1.2 million to the extent such funds become available~~; and (vi) eighty percent (80%) of the Miscellaneous Collateral Proceeds. Notwithstanding anything to the contrary in the Plan, the first $100,000 from the Cash proceeds~~. For the avoidance of doubt, any and all distributions to Lender on account of its Class 1 and 2 Claims described in Paragraphs 7.2 and 7.3 of the Plan shall ~~be retained by the Estate for the benefit of holders of Class 3 Claims. For purposes of proviso (vi) of Paragraph 7.2 of the Plan, unless agreed to by and between Lender and the Debtors or the Liquidating Trustee, as the case may be, the Bankruptcy Court shall determine whether such proceeds constitute proceeds from the liquidation of Collateral~~not exceed $3,828,953.43 in the aggregate. |
| Impaired | |
| Class 2 – Lender Deficiency Claim | As set forth in Paragraph 7.3 of the Plan, as of |

| | |
|---|---|
| Impaired | the Effective Date, the Lender Deficiency Claim shall be deemed Allowed in an amount equal to the amount of the Lender Claim, less proceeds received pursuant to Paragraph 7.2 ~~of the Plan~~. In full and final satisfaction of the Lender Deficiency Claim, Lender shall be entitled to receive Cash proceeds~~-~~, provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan, from the following: (i) Cash in the amount of $450,000 (the "Lender Reserve Amount") on the Effective Date from the Disputed Cash Collateral Account; and (ii) twenty percent (20%) of Cash proceeds, if any, from or as a result of ~~any proceeding, settlement, award, release or negotiation relative to any actual or potential cause of action in connection with a Commercial Tort Claim or Avoidance Claim against any Person, or (a)~~ any insurance policies insuring against business losses or crimes~~-~~, (b) any and all wine actually recovered from Mr. John Eichner in connection with the Information and Plea and (c) the forfeiture of $143,458 by Mr. John Eichner pursuant to the Information and Plea, within ten (10) Business Days of the ~~Liquidating Trustee's receipt of such proceeds; and (iii) twenty percent (20%) of the Miscellaneous Non-Collateral Proceeds, within ten (10) Business Days of the Liquidating~~ Litigation Trustee's receipt of such proceeds. ~~For purposes of proviso (iii) of Paragraph 7.3 of the Plan, unless agreed to by and between Lender and the Debtors or the Liquidating Trustee, as the case may be, the Bankruptcy Court shall determine whether such proceeds constitute proceeds from the liquidation of Non-Collateral~~Notwithstanding anything to the contrary in the Plan, the first $100,000 from the Cash proceeds described in Paragraph 7.3 of the Plan shall be retained by the Estate for the benefit of holders of Class 3 Claims. For the avoidance of doubt, any and all distributions to Lender on account of its Class 1 and 2 Claims described in Paragraphs 7.2 and 7.3 of the Plan shall not exceed $3,828,953.43 in the aggregate. |

| Class 3 – General Unsecured Claims<br><br>Impaired | As set forth in Paragraph 7.4 of the Plan, each holder of an Allowed General Unsecured Claim shall be entitled to Cash in the amount of the Non-Lender Proceeds, on a Pro Rata basis, on the next available Plan Distribution Date, provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan. |
|---|---|
| Class 4 – Interests and Subordinated Equity Claims<br><br>Unimpaired | ~~Each~~ As set forth in Paragraph 6.1 of the Plan, each holder of an Interest or Allowed Subordinated Equity Claim is not entitled to vote to accept or reject this Plan. Each holder of an Interest or Allowed Subordinated Equity Claim shall be entitled to receive any distribution of Residual Cash on a Pro Rata basis on the next available Plan Distribution Date in accordance with Paragraph 13.5 of the Plan. For the avoidance of doubt, distributions pursuant to Paragraph 6.1 of the Plan shall only be made after all costs and expenses of the Estate, the Litigation trust, the Plan Trust and all Claims in Classes 1, 2 and 3 have been paid in full in accordance with the terms of the Plan including Paragraph 18.9 of the Plan. |

## IV.    GENERAL INFORMATION

A.    History and Overview of the Debtors' Business

The Company, founded in 1907 by Harold M. Pitman in Chicago, Illinois, began as a one-man shop, manufacturing and selling steel dyes and copper plates to engravers. Eventually, the Company began providing chemical solutions and other tools for the engraving trade. The manufacturing side of the business was phased out and the Company eventually became recognized as the "best graphics art dealer in the world." Most recently, the Company focused on seven business divisions: (i) Commercial Printing, (ii) Display Graphics, (iii) Pressroom, (iv) Digital Imaging, (v) Packaging, (vi) Professional Services, and (vii) Technical Design. In fact, until recently, the Company was North America's leading value-added supplier to the graphic communication industry, providing a full range of digital imaging solutions, support services and a comprehensive portfolio of prepress and pressroom consumable products.

As of July 2010, the Company employed approximately 500 full-time employees throughout its U.S. locations. The Debtors' operations spanned across the United States and included office locations and imaging and packaging centers in Kennesaw, GA, Jessup, MD,

Bloomingdale, IL, West Chester, OH, Dayton, OH, Plano, TX, City of Industry, CA, NE Minneapolis, MN, Totowa, NJ, Exton, PA, Salt Lake City, UT, Fairfield, CA, Auburn, WA, Earth City, MO and Woburn, MA. This national network enabled the Company to provide attentive and efficient service as it was able to adapt to the national scope of its customers' businesses.

B.    Debtors' Corporate and Capital Structures

HMP Services Holding, Inc., a privately held entity, directly owns 100% of the limited liability company interests in HMP Services Holding Sub I, LLC f/k/a Pitman Acquisition, LLC. HMP Services Holding Sub I, LLC, a Delaware limited liability company, is the owner of 100% of the limited liability company interests in HMP Services Holding Sub II, LLC f/k/a Charrette Acquisition LLC, a Delaware limited liability company. Finally, HMP Services Holding Sub II, LLC is the owner of 100% of the limited liability company interests in HMP Services Holding Sub III, LLC, a Delaware limited liability company ("Charrette").

The Debtors' primary liabilities, totaling approximately $13.6 million in the aggregate as of the Petition Date, consist of (i) liabilities arising under the Credit Agreement, (ii) various landlord damage claims, (iii) various employee contract liability claims, (iv) governmental entity tax and related claims, (v) accounts payable, (vi) Deferred Compensation Claims (as defined below) and (vii) carious actions to recover funds as avoidable preference payments. As of the Closing Date (as defined below), the Debtors, on a consolidated basis, reported approximately $163,882,000 in total liabilities and approximately $128,215,000 in total assets. Thus, the Company, as of the Closing Date, had a negative book value of approximately $35.7 million.

As of the Petition Date, the Debtors' secured debt stemmed from that certain second amended and restated credit agreement between and among Harold M. Pitman Company and Charrette LLC, as borrowers, the other credit parties signatory thereto, as credit parties, the lenders signatory thereto from time to time, as lenders, and General Electric Capital Corporation, as agent and lender, and GE Capital Markets, Inc., as lead arranger, dated as of July 3, 2006, and any ancillary documents thereto (the "Credit Agreement"). ORIX Finance Corp. ("ORIX" or the "Lender") is the secured lender under the Credit Agreement and the successor agent under the Credit Agreement and holds a lien on a substantial portion of the Debtors' remaining assets and is owed approximately $4.2 3.8 million.[64]

As of the Petition Date, the Debtors faced approximately $9.4 million in unsecured claims. The Debtors owed approximately (i) $3.6 million on account of claims (the "Deferred Compensation Claims") arising under the Company's deferred compensation non-qualified retirement benefit plan (the "Renaissance Plan"); (ii) $3.5 million on account of certain employee claims related to contract terminations and other contractual payments (the "Employee Claims"); (iii) $1.3 million on account of landlord contractual claims (the "Landlord Claims"); (iv) $191,000 in accounts payable to certain vendors (the "Vendor Claims"); and (vi) $776,000 on account of various actions to recover funds as avoidable preference payments (the "Preference Claims" and together with the Deferred Compensation Claims, the Employee

---

[64]    Prior to the Sale (as defined below), ORIX was owed approximately $18.1 million on account of the Credit Agreement.

Claims, the Landlord Claims and the Vendor Claims, the "Unsecured Claims"). The above estimation of Unsecured Claims is subject to adjustment because of the possibility of the assertion by other creditors of claims which as of this point have not been presented and are not known by the Company.

C.    Events Leading to the Commencement of the Case Under Chapter 11

Over the last four years, the Company experienced a significant decline in demand for its products. The drivers of this decline were both the downturn in economic activity compounded by an accelerating shift away from printed paper. The Company's revenues declined by 29% from fiscal year 2007 through fiscal year 2010 and continued to decline in fiscal year 2011. While management adjusted the cost structure of the Company in response to this decline, the reductions were unable to keep up with the velocity of the drop in sales and the Company had significant losses in the last two years.

Compounding the impact of recent losses was the high level of debt on the Company's balance sheet which arose predominantly from the acquisition of Charrette, which had been a competitor. In fiscal year 2007, the Company acquired Charrette for $43 million with the expectation that the Company would achieve meaningful revenue growth and realize synergies which would drive earnings growth. Unfortunately, this growth in earnings was never realized and the Company has had declining earnings in every year since the acquisition. Continued operating losses, as well as write downs of goodwill and other intangible assets, has put shareholders in a negative equity situation.

The significant losses described above led the Company to engage in discussions with Agfa Corporation ("Agfa") with the purpose of effectuating the sale of substantially all of the Company's assets. These discussions were most recently prompted by the Company's reported $8.1 million loss from January 1, 2010 through May 31, 2010. The Company entered into an agreement to sell substantially all of its assets to Agfa (the "Sale") and such agreement was memorialized by that certain asset purchase agreement between Agfa Corporation, as buyer, and Harold M. Pitman Company, as seller, dated as of July 14, 2010 and any ancillary documents thereto (the "APA"). With the support of its lenders under the Credit Agreement under which the Company was in default, the Sale was consummated on August 10, 2010 (the "Closing Date"). As of the closing of the Sale, the Company had a negative book value of $35.7 million.

Agfa acquired substantially all of the Company's assets for consideration far in excess of book value, including the assumption of certain of the Company's trade debt, as well as a cash payment of approximately $74.9 million. In full satisfaction of any and all of its senior claims, General Electric Capital Corporation, the Company's first senior secured lender (ahead of ORIX), was paid approximately $55.1 million, leaving net proceeds of approximately $19.8 million. Out of these net proceeds, (i) ORIX was paid approximately $13.89 million in partial satisfaction of its secured claim under the Credit Agreement, Agfa withheld approximately $2.7 million on account of various adjustments and holdbacks provided for under the APA and (iii) various other payments in connection with employee related costs, transaction costs, taxes, settlement payments to unsecured creditors and other wind-down costs were made, leaving a balance of proceeds from the Sale of approximately $267,000. Certain assets were excluded

from the Sale, including (i) certain tax refunds, (ii) the cash surrender value of certain life insurance policies, and (iii) certain claims and causes of action against third parties (collectively and as more specifically identified in the APA, the "Excluded Assets"). The Company expects that proceeds from the liquidation of the Excluded Assets and any other available assets, less costs related to such liquidation, together with the remaining Sale proceeds will be insufficient to satisfy its remaining creditors in full.

Furthermore, since the Closing Date, the Company has attempted to engage its remaining creditors in negotiations in order to consensually resolve claims with the support of ORIX, its remaining secured lender. Although such negotiations were proceeding forward, the Company has begun to receive a variety of claims that were previously unknown and will require the adjudication of a formal claims process. The filing of these Chapter 11 Cases is to ensure an efficient administration and liquidation of the Debtors' remaining assets so that creditors are paid in a fair and equitable manner.

Additionally and prior to <u>the Petition Date, the Company and ORIX entered into that certain plan support agreement to implement a restructuring (the "First Agreement") pursuant to the terms and conditions set forth in the then-proposed plan of liquidation (the "First Plan"). Prior to the date hereof and after</u> the Petition Date, the Company and ORIX engaged in arm's length, good faith negotiations regarding the satisfaction (the "Restructuring") of the Company's indebtedness to ORIX<u>, certain modification to the First Plan</u> and <u>the Company's indebtedness</u> to the Company's other creditors pursuant to the Plan, filed contemporaneously herewith. The Company and ORIX were able to enter into a certain plan support agreement setting forth their commitment to implement the Restructuring (the "Plan Support Agreement" or "PSA"). The Restructuring was intended to reach a consensual resolution and apportionment of proceeds from the liquidation of Collateral (as such term is defined in the Credit Agreement) and all other assets (the "Non-Collateral"). The Company believes that the agreement with ORIX set forth in the PSA as to the satisfaction of ORIX's claim will provide unsecured creditors with a greater recovery rate than they would otherwise be entitled to absent ORIX's agreement of the same.

## V.    THE CHAPTER 11 CASES

A.    Commencement of the Chapter 11 Cases

On November 8, 2010, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. ~~The~~ <u>An earlier version of the</u> Plan and ~~this~~ Disclosure Statement~~,~~ <u>, respectively,</u> were filed with the Bankruptcy Court together with the petitions.

B.    Continuance of Administrative Operations After the Petition Date

The Debtors ~~will continue~~ <u>have continued</u> their administrative operations and ~~manage~~ <u>managed</u> their assets as debtors-in-possession after the Petition Date. The Debtors will seek the Bankruptcy Court's approval for all transactions outside the ordinary course of business.

The Debtors are making every effort to commence and implement these cases with as

little disruption as possible to their orderly wind-down and the liquidation of their assets for the benefit of creditors.

First Day Pleadings included:

     i.     Joint Administration

In order to expedite the administration of these Chapter 11 Cases and reduce administrative expenses without prejudicing any creditor's substantive rights, the Debtors sought and received authority to consolidate all filings under a single case name, in a single docket.

     ii.     Consolidated List of Creditors

The Debtors filed a motion seeking and received permission to file (i) a consolidated list of creditors and (ii) a consolidated list of the Debtors' twenty (20) largest creditors, as well as permission to complete all mailings of notices.

     iii.     Retention of Professionals and Appointment of Officers

~~The~~ At the outset of these Chapter 11 Cases, the Debtors sought and received Bankruptcy Court authority to retain and employ certain professionals (the "Professionals") and appoint certain officers (the "Officers") to represent them and assist them in connection with their Chapter 11 Cases. Some of these Professionals and Officers have been intimately involved with the negotiation and development of the Plan and include, among others: (i) Brown Rudnick LLP, as co-counsel for the Debtors; (ii) Saul Ewing, as co-counsel for the Debtors; and (iii) John Haggerty and Peter Sullivan, each of Argus Management Corporation, as Chief Restructuring Officer and Assistant Restructuring Officer, respectively, to the Debtors.

     iv.     Interim Compensation

In an effort to enable all parties to monitor the costs of administration, enable the maintenance of a more level cash flow availability and implement efficient cash management, the Debtors have developed procedures for interim compensation and reimbursement of expenses of the Professionals and the professionals and members of any official committee appointed in the Chapter 11 Cases~~, if any~~. On the Petition Date, the Debtors sought and received an order establishing certain procedures with which all Professionals would be required to comply in seeking compensation and reimbursement.

     v.     Cash Collateral Stipulation, Existing Bank Accounts and Business Forms

The Debtors and ORIX filed a consensual stipulation for the limited use of the Disputed Cash Collateral Account. More specifically, and as described in the stipulation, ORIX consented to the use of certain deposited proceeds from the cash surrender value of certain life insurance policies (the "Disputed Cash Collateral"). Upon approval of the stipulation by the Bankruptcy Court and as set forth therein, the Debtors ~~will be~~ became obligated to use the Disputed Cash Collateral only to pay the actual, necessary and reasonable administrative expenses associated

with the orderly liquidation of the Debtors' remaining assets provided that the Debtors ~~agree~~ agreed to reserve a total of $450,000 from the Disputed Cash Collateral for the express benefit of ORIX and also grant ORIX adequate protection liens if there is any diminution in the value of ORIX's security interest in the Disputed Cash Collateral.

As of the Petition Date, the Debtors had in place certain bank accounts, including the Disputed Cash Collateral Account, supporting their remaining administrative operations, including, but not limited to, in relation to the Sale, health insurance proceeds and disbursements to creditors. Contemporaneously with the filing of the petitions, the Debtors filed a motion for an order authorizing the Debtors to continue to use their existing bank accounts, cash management system and business forms.

Continued use of the existing bank accounts and business forms is essential to facilitate the Debtors' smooth and orderly transition into chapter 11, minimize the disruption to their businesses while in chapter 11 and expedite their orderly wind-down and liquidation. ~~Requiring the Debtors to adopt and implement new bank accounts and business forms would likely increase the costs of the Chapter 11 Cases, primarily as a result of the significant time and expense associated~~ In consultation with ~~the transition to such new accounts and forms. Thus, requiring the Debtors to cancel their existing bank accounts and establish new accounts or requiring them to create new business forms would only frustrate the Debtors' efforts to liquidate expeditiously.~~ the Office of the United States Trustee, the Debtors were able to implement a post-petition cash management system in an efficient and orderly manner.

C.      Administration of These Chapter 11 Cases

After commencement of these Chapter 11 Cases, the Debtors have proceeded to efficiently and effectively administer the Debtors' Estates under the protection of the Bankruptcy Code. The Office of the United States Trustee, by amended notice dated December 2, 2010, appointed the Official Committee of Unsecured Creditors (the "Official Committee"). The Debtors have pursued an orderly wind-down and liquidation of their remaining assets in consultation with the Office of the United States Trustee, the Official Committee and other parties-in-interest during the Chapter 11 Cases.

D.      Matters Relating to Unexpired Leases and Executory Contracts

Bankruptcy Code Section 365 grants the Debtors the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is assumed, the rights of the Debtor party to such agreement continue as property of the Debtors' Estates. A subsequent breach of an assumed lease or executory contract creates an Administrative Claim in favor of the non-debtor counterparty, entitling it to an Administrative Claim for pre-petition obligations as well as post-petition obligations arising as a result of the breach. If an executory contract or unexpired lease is rejected, the non-debtor counterparty to the agreement may file a claim for damages incurred by reason of the rejection, which is treated as a pre-petition claim. In the case of rejection of leases of real property, such damage claims are subject to certain claim amount limitations imposed by the Bankruptcy Code.

For a description of the special bar date established on account of such claims, see "The Chapter 11 Cases — Schedules, Bar Dates, Claims Objections and Estimated Amount of Claims," below.

Generally, debtors have until the confirmation date of a chapter 11 plan to assume executory contracts and unexpired leases to which they are a party. An exception to the foregoing is set forth in Bankruptcy Code Section 365(d)(4), which provides that if a debtor does not assume or reject an unexpired lease of nonresidential real property under which a debtor is the lessee (i) within 120 days after the petition date, (ii) within a 90-day additional period as the bankruptcy court, for cause, fixes or (iii) within such additional time as the bankruptcy court, for cause, fixes with the consent of the landlord of the leased premises, then such lease is deemed rejected.

E.      Exclusivity Periods

        Pursuant to Bankruptcy Code Sections 1121(b) and (c)(3), the Debtors have: (i) the Filing Period within which to file the Plan and (ii) the Solicitation Period to solicit acceptances of this timely filed Plan before other parties-in-interest are permitted to file plans. As the Debtors' Plan was filed with their petitions, no other creditor or party-in-interest may file a plan until the expiration of the Solicitation Period. The initial Solicitation Period will expire on May 9, 2011.

F.      Schedules, Bar Dates and Claims Objections

        The Debtors filed their Schedules within fourteen (14) days of the Petition Date as provided in Bankruptcy Rule 1007. In addition, the Debtors received Bankruptcy Court approval of the following bar dates related to the filing of proofs of claim: (i) Claims Bar Date of February 11, 2011 at 5:00 p.m.; (ii) Government Bar Date of May 9, 2011; (iii) Rejection Damages Bar Date within the later of (a) the applicable Claims Bar Date or Government Bar Date or (b) fifteen (15) days after the Bankruptcy Court's entry of the Confirmation Order or other order approving the rejection of the applicable executory contract or unexpired lease; (iv) the Administrative Claim Bar Date of within forty (40) days after service of the Notice of Confirmation; (v) Professional Fee Claim Bar Date within thirty (30) days after service of the Notice of Confirmation; and (vi) an Amended Schedules Bar Date of the later of (a) the applicable Claims Bar Date or Government Bar Date or (b) the date that is twenty one (21) days from the date of the notice to the holder of the affected Claim that the Debtors' Schedules have been amended, as required by Local Rule 1009-2.

        Notwithstanding anything to the contrary in the Plan, Disclosure Statement or Bar Date Order, the filing of proofs of claim, including, but not limited to, timing and manner, shall be governed by the Bar Date Order as entered by the Bankruptcy Court; provided, however, and for the avoidance of doubt and notwithstanding anything to the contrary in the Plan, Disclosure Statement or Bar Date Order, the Lender is exempted from the proof of claim filing requirement in regards to the Lender Claim.

        Unless another date is established by the Bankruptcy Court, any objection to a Claim shall be filed with the Bankruptcy Court and served on the Person holding such Claim within one hundred eighty (180) days of the Effective Date ("Claims Objection Bar Date").

# VI.    THE CHAPTER 11 PLAN

As a result of the chapter 11 process and through the Plan, the Debtors expect that creditors will obtain a substantially greater recovery from the Estates than the recovery that would be available if the Debtors' remaining assets had been liquidated under chapter 7 of the Bankruptcy Code. The Plan is annexed hereto as **Exhibit A** and forms part of this Disclosure Statement. The summary of the Plan set forth below is qualified in its entirety by the more detailed provisions set forth in the Plan.

A.    Classification and Treatment of Claims and Interests

For the purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims against and all Interests in each if the Debtors shall be classified as set forth below.

i.    Administrative Claims and Priority Claims

As provided by Bankruptcy Code Section 1123(a)(1), Administrative Claims and Priority Claims shall not be classified under the Plan. Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of Bankruptcy Code Sections 1123, 1124, 1125, 1126 or 1129.

1.    *Administrative Claims*

All Administrative Claims shall be treated as follows:

(a)    Time for Filing Administrative Claims.

~~C.Matters Relating to Unexpired Leases and Executory Contracts~~

~~Bankruptcy Code Section 365 grants the Debtors the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is assumed, the rights of the Debtor party to such agreement continue as property of the Debtors' Estates. A subsequent breach of an assumed lease or executory contract creates an Administrative Claim in favor of the non-debtor counterparty, entitling it to an Administrative Claim for pre-petition obligations as well as post-petition obligations arising as a result of the breach. If an executory contract or unexpired lease is rejected, the non-debtor counterparty to the agreement may file a claim for damages incurred by reason of the rejection, which is treated as a pre-petition claim. In the case of rejection of leases of real property, such damage claims are subject to certain claim amount limitations imposed by the Bankruptcy Code. For a description of the special bar date established on account of such claims, see "The Chapter 11 Cases — Schedules, Bar Dates, Claims Objections and Estimated Amount of Claims," below.~~

Generally, debtors have until the confirmation date of a chapter 11 plan to assume executory contracts and unexpired leases to which they are a party. An exception to the foregoing is set forth in Bankruptcy Code Section 365(d)(4), which provides that if a debtor does not assume or reject an unexpired lease of nonresidential real property under which a debtor is the lessee (i) within 120 days after the petition date, (ii) within a 90-day additional period as the bankruptcy court, for cause, fixes or (iii) within such additional time as the bankruptcy court, for cause, fixes with the consent of the landlord of the leased premises, then such lease is deemed rejected.

D. Exclusivity Periods

Pursuant to Bankruptcy Code Sections 1121(b) and (c)(3), the Debtors have: (i) the Filing Period within which to file the Plan and (ii) the Solicitation Period to solicit acceptances of this timely filed Plan before other parties-in-interest are permitted to file plans. As the Debtors' Plan was filed with their petitions, no other creditor or party-in-interest may file a plan until the expiration of the Solicitation Period. The initial Solicitation Period will expire on May 9, 2011.

E. Schedules, Bar Dates and Claims Objections

The Debtors shall file their Schedules within fourteen (14) days of the Petition Date as provided in Bankruptcy Rule 1007. In addition, the Debtors have filed a motion with the Court seeking approval of the following bar dates related to the filing of proofs of claim: (i) Claims Bar Date of January [___], 2011 at 5:00 p.m.; (ii) Government Bar Date of May 9, 2011; (iii) Rejection Damages Bar Date within the later of (a) the applicable Claims Bar Date or Government Bar Date or (b) fifteen (15) days after the Bankruptcy Court's entry of the Confirmation Order or other order approving the rejection of the applicable executory contract or unexpired lease; (iv) the Administrative Claim Bar Date of within forty (40) days after service of the Notice of Confirmation; (v) Professional Fee Claim Bar Date within thirty (30) days after service of the Notice of Confirmation; and (vi) an Amended Schedules Bar Date of the later of (a) the applicable Claims Bar Date or Government Bar Date or (b) the date that is twenty one (21) days from the date of the notice to the holder of the affected Claim that the Debtors' Schedules have been amended, as required by Local Rule 1009-2.

Notwithstanding anything to the contrary in the Plan, Disclosure Statement or Bar Date Order, the filing of proofs of claim, including, but not limited to, timing and manner, shall be governed by the Bar Date Order as entered by the Bankruptcy Court; provided, however, and for the avoidance of doubt and notwithstanding anything to the contrary in the Plan, Disclosure Statement or Bar Date Order, the Lender is exempted from the proof of claim filing requirement in regards to the Lender Claim.

Unless another date is established by the Bankruptcy Court, any objection to a Claim shall be filed with the Bankruptcy Court and served on the Person holding such Claim within sixty (60) days of the Effective Date ("Claims Objection Bar Date").

VI. THE CHAPTER 11 PLAN

As a result of the chapter 11 process and through the Plan, the Debtors expect that creditors will obtain a substantially greater recovery from the Estates than the recovery that would be available if the Debtors' remaining assets had been liquidated under chapter 7 of the Bankruptcy Code. The Plan is annexed hereto as **Exhibit A** and forms part of this Disclosure Statement. The summary of the Plan set forth below is qualified in its entirety by the more

detailed provisions set forth in the Plan.

A.     Classification and Treatment of Claims and Interests

       For the purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims against and all Interests in each if the Debtors shall be classified as set forth below.

       i.     Administrative Claims and Priority Claims

       As provided by Bankruptcy Code Section 1123(a)(1), Administrative Claims and Priority Claims shall not be classified under the Plan.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of Bankruptcy Code Sections 1123, 1124, 1125, 1126 or 1129.

              1.     *Administrative Claims*

       All Administrative Claims shall be treated as follows:

       (a)     Time for Filing Administrative Claims.

The holder of an Administrative Claim, other than (i) a Professional Fee Claim, (ii) a liability incurred and payable in the ordinary course of business by the Debtors (and not past due) or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, any Committee The holder of an Administrative Claim, other than (i) a Professional Fee Claim, (ii) a liability incurred and payable in the ordinary course of business by the Debtors (and not past due) or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, any Committee, the Office of the United States Trustee and the Office of the United States Trustee,the Litigation Trustee, notice of such Administrative Claim within forty (40) days after service of the Notice of Confirmation (the "Administrative Bar Date").  Such notice must include at a minimum (A) the name of the Debtor which is purportedly liable for the Claim, (B) the name of the holder of the Claim, (C) the amount of the Claim and (D) the basis of the Claim. **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged**.  Objections to any filed request for payment of an alleged Administrative Claim must be filed and served on the claimant and the Debtors within thirty (30) days of the filing of the Administrative Claim, whereupon the Bankruptcy Court shall schedule a hearing thereon.

       (b)     Time for Filing Professional Fee Claims.

       Each Professional Person who holds or asserts a claim for services rendered to the Estate before the Effective Date (a "Professional Fee Claim") must file with the Bankruptcy Court and serve on the Debtors , Litigation Trustee and the Office of the United States Trustee a Professional Fee Application within thirty (30forty-five (45) days after service of the Notice of Confirmation (the "Professional Fee Claim Bar Date").  **The failure to timely file and serve such Professional Fee Application shall result in the Professional Fee Claim being forever**

**barred and discharged**. Objections to any Professional Fee Claim must be filed and served on the claimant, the Debtors, the Litigation Trustee and the Office of the United States Trustee within fifteen (15) days of the filing of the Professional Fee Claim, whereupon the Bankruptcy Court shall schedule a hearing thereon.

(c)     Allowance of Administrative Claims and Professional Fee Claims.

An Administrative Claim with respect to which notice has been properly filed and served pursuant to Paragraph 4.2(a) of the Plan shall become an Allowed Administrative Claim if no objection is filed in accordance with Paragraph 4.2(a) of the Plan or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within the thirty (30) day period as described in Paragraph 4.2(a) of the Plan (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. A Professional Fee Claim in respect of which a Professional Fee Application has been properly filed and served pursuant to Paragraph 4.2(b) of the Plan shall become an Allowed Administrative Claim when, as and if approved by the Bankruptcy Court.

(d)     Payment of Allowed Administrative Claims.

Each Allowed Administrative Claim shall, at the sole option of the Debtors or the Litigation Trustee, as the case may be, receive (i) on the Plan Distribution Date, the amount of such Allowed Claim in Cash, (ii) with respect to Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtors, payment when and as such Administrative Claims become due and owing by their ordinary course terms or (iii) such other treatment as may be agreed upon in writing by the Debtors or the Liquidating Litigation Trustee, as the case may be, and the holder of such Claim; provided, however, that such treatment shall not provide to the holder of such Claim a return having a present value as of the Effective Date in excess of such Allowed Administrative Claim. If a portion of an Administrative Claim is disputed, the undisputed portion of such Administrative Claim shall be timely paid as provided above.

(e)     Administrative Claims Estimate.

Prior to the Confirmation Hearing, the Debtors shall provide the Official Committee with a schedule containing a good faith estimate of the number and amount of all Administrative Claims.

2.     *Priority Claims*

Each Person holding an Allowed Priority Claim shall be paid in Cash in full (subject to any applicable cap under Bankruptcy Code Section 507(a)) on the Plan Distribution Date.

ii.     Debtor Claims and Interests

The classes of Claims against the Debtors and the Interests in the Debtors shall be treated under the Plan as follows:

Class 1 – Lender Secured Claim. In full and final satisfaction of the Lender Secured Claim, Lender shall be entitled to receive Cash proceeds~~,~~ , provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan, from the following, to the extent not otherwise previously distributed to the Lender, within five (5) Business Days of the ~~Liquidating Plan~~ Trustee's receipt, unless distributed earlier during the pendency of the Case pursuant to an order of the Bankruptcy Court: (i) eighty percent (80%) of the Tax Refund; (ii) the first $750,000 of the APA Holdback Amount to the extent such funds are released to the Debtors pursuant to the terms of the APA and Escrow Agreement; (iii) twenty percent (20%) of any portion of the APA Holdback Amount in excess of the first $750,000 that may be received to the extent such funds are released to the Debtors pursuant to the terms of the APA and Escrow Agreement; (iv) fifty percent (50%) of the first $1.2 million of the Health Insurance Overage Amount to the extent such funds become available; and (v) one hundred percent (100%) of any portion of the Health Insurance Overage Amount in excess of $1.2 million to the extent such funds become available~~; and (vi) eighty percent (80%) of the Miscellaneous Collateral Proceeds. Notwithstanding anything to the contrary herein, the first $100,000 from the Cash proceeds described in.~~ For the avoidance of doubt, any and all distributions to Lender on account of its Class 1 and 2 Claims described in Paragraphs 7.2 and ~~7.3 of the Plan shall be retained by the Estate for the benefit of holders of Class 3 Claims. For purposes of proviso (vi) of Paragraph 7.2 of the Plan, unless agreed to by and between Lender and the Debtors or the Liquidating Trustee, as the case may be, the Bankruptcy Court shall determine whether such proceeds constitute proceeds from the liquidation of Collateral~~7.3 of the Plan shall not exceed $3,828,953.43 in the aggregate.

Class 2 – Lender Deficiency Claim. As of the Effective Date, the Lender Deficiency Claim shall be deemed Allowed in an amount equal to the amount of the Lender Claim, less proceeds received pursuant to Paragraph 7.2 of the Plan. In full and final satisfaction of the Lender Deficiency Claim, Lender shall be entitled to receive Cash proceeds~~,~~ , provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan, from the following: (i) Cash in the amount of $450,000 (the "Lender Reserve Amount") on the Effective Date from the Disputed Cash Collateral Account; and (ii) twenty percent (20%) of Cash proceeds, if any, from or as a result of ~~any proceeding, settlement, award, release or negotiation relating to any actual or potential cause of action in connection with a Commercial Tort Claim or Avoidance Claim against any Person, or~~ (a) any insurance policies insuring against business losses or crimes , (b) any and all wine actually recovered from Mr. John Eichner in connection with the Information and Plea and (c) the forfeiture of $143,458 by Mr. John Eichner pursuant to the Information and Plea, within ten (10) Business Days of the ~~Liquidating Trustee's receipt of such proceeds; and (iii) twenty percent (20%) of the Miscellaneous Non-Collateral Proceeds, within ten (10) Business Days of the Liquidating~~ Litigation Trustee's receipt of such proceeds. ~~For purposes of proviso (iii) of Paragraph 7.3 of~~ Notwithstanding anything to the contrary in the Plan, ~~unless agreed to by and between Lender and the Debtors or the Liquidating Trustee, as the case may be, the Bankruptcy Court shall determine whether such proceeds constitute proceeds from the liquidation of Non-Collateral.~~the first $100,000 from the Cash proceeds described in Paragraph 7.3 of the Plan shall be retained by the Estate for the benefit of holders of Class 3 Claims. For the avoidance of doubt, any and all distributions to Lender on account of its Class 1 and 2 Claims described in Paragraphs 7.2 and 7.3 of the Plan shall not exceed $3,828,953.43 in the aggregate.

Class 3 – General Unsecured Claims. Each holder of an Allowed General Unsecured Claim shall be entitled to Cash in the amount of the Non-Lender Proceeds, on a Pro Rata basis, on the next available Plan Distribution Date, provided that all distributions are to be made in accordance with Paragraph 12.2 of the Plan.

Class 4 – Interests and Subordinated Equity Claims. Each holder of an Interest or Allowed Subordinated Equity Claim is not entitled to vote to accept or reject this Plan. Each holder of an Interest or Allowed Subordinated Equity Claim shall be entitled to receive any distribution of Residual Cash on a Pro Rata basis on the next available Plan Distribution Date in accordance with Paragraph 13.5 of the Plan. For the avoidance of doubt, distributions pursuant to Paragraph 6.1 of the Plan shall only be made after all costs and expenses of the Estate, the Litigation trust, the Plan Trust and all Claims in Classes 1, 2 and 3 have been paid in full in accordance with the terms of the Plan including Paragraph 18.9 of the Plan.

**B.**     Means for Execution and Implementation of the Plan – the Litigation Trust

        **i.**     Litigation Trust

On the Effective Date, a newly-formed Delaware trust with no prior assets or liabilities shall be created to wind-down the remainder of Debtors' business and to make certain distributions pursuant to Paragraphs 6.1, 7.3 and 7.4 (other than the Lender Reserve Amount) of the Plan and liquidate or otherwise administer certain related assets (the "Litigation Trust"). A Person designated by the Committee shall be appointed as the Litigation Trustee and shall serve as the trustee of the Litigation Trust with the rights and duties set forth in Article X of the Plan and otherwise in the Plan. For the avoidance of doubt, the Litigation Trustee, on the Effective Date, shall have the sole authority to administer the Litigation Trust Assets. ~~Class 3    General Unsecured Claims.   Each holder of an Allowed General Unsecured Claim shall be entitled to Cash in the amount of the Non-Lender Proceeds, on a Pro Rata basis, on the next available Plan Distribution Date~~
        ~~.~~

~~Class 4    Interests and Subordinated Equity Claims.   Each holder of an Interest or Allowed Subordinated Equity Claim is not entitled to vote to accept or reject this Plan.   Each holder of an Interest or Allowed Subordinated Equity Claim shall be entitled  to receive any distribution of Residual Cash on a Pro Rata basis on the next available Plan Distribution Date.~~

~~B.Means for Execution and Implementation of the Plani.Liquidating Trust~~
~~On the Effective Date, a newly-formed Delaware trust with no prior assets or liabilities shall be created to wind-down the remainder of Debtors' business and liquidate their remaining assets (the "Liquidating Trust").  [            ] shall be appointed as the Liquidating Trustee and shall serve as the trustee of the Liquidating Trust with the rights and duties set forth in Article XI and otherwise in the Plan.   For the avoidance of doubt, the Liquidating Trustee, on the Effective Date, shall have the sole authority to administer the Liquidating Trust Assets.~~

        **ii.**     Transfers to the ~~Liquidating~~ Litigation Trust

On the Effective Date, the Debtors and the Estate shall transfer and shall be deemed to

have irrevocably transferred to the ~~Liquidating~~ Litigation Trust all of the ~~Liquidating~~ Litigation Trust Assets (but subject to all rights, defenses and setoffs of any ~~defendant~~party-in-interest including the Plan Trustee).

  iii.  ~~Preferences~~ Third Party Claims, Avoidance Claims, Commercial Tort Claims and other Recoveries

~~The Liquidating Trustee shall be granted the right under the Plan to pursue all Estate causes of actions arising under chapter 5 of the Bankruptcy Code, which are expressly preserved and survive confirmation of the Plan (the "Avoidance Claims"). Additionally, the Liquidating Trustee shall be authorized to pursue on behalf of the Estate all Commercial Tort Claims belonging to the Estate.~~

~~Any recoveries in actions brought pursuant to the authority granted by Paragraph 10.3 of the Plan (net of reasonable costs and professional fees incurred by the Liquidating Trustee in discharge of its duties) shall be distributed to holders of Allowed Class 2, 3 and 4 Claimspursuant to Paragraphs 6.1, 7.3, 7.4 and Article XI of the Plan.~~

  ~~iv.  Liquidation of Assets~~

~~Apart from actions brought pursuant to Paragraph 10.3 of the Plan, the Liquidating Trustee shall be authorized to liquidate the Debtors' assets and shall make distributions of such Cash proceeds as provided in Paragraphs 6.1, 7.2, 7.3 and 7.4 of the Plan, respectively.~~ All Third Party Claims, Avoidance Claims and Commercial Tort Claims are hereby preserved and survive confirmation of the Plan for prosecution and enforcement by the Litigation Trustee. The Litigation Trustee is authorized to pursue all Third Party Claims, Avoidance Claims and Commercial Tort Claims but is not directed to do so and shall have no obligation to perform an analysis of Third Party Claims, Avoidance Claims and Commercial Tort Claims and shall do so at its sole discretion.

Any recoveries in actions brought pursuant to the authority granted by Paragraph 10.3 of the Plan (net of reasonable costs, including taxes, other expenses and professional fees incurred by the Litigation Trustee in discharge of its duties) shall be distributed to holders of Allowed Class 2, 3 and 4 Claims and Interests pursuant to Paragraphs 6.1, 7.3, 7.4 and Article X of the Plan.

  iv.  Liquidation of Assets

Apart from actions brought pursuant to Paragraph 10.3 of the Plan, the Litigation Trustee shall be authorized to liquidate or otherwise administer the Litigation Trust Assets and shall make distributions of such Cash proceeds as provided in Paragraphs 6.1, 7.3 (other than the Lender Reserve Amount) and 7.4 of the Plan, respectively.

~~C.Liquidating~~ C.  Litigation Trustee

  i.  Authority of the ~~Liquidating~~ Litigation Trustee

~~The Liquidating Trustee shall have the authority set forth in the Plan until all distributions required to be made to holders of Allowed Class 1, 2, 3 and 4 Claims have been made in accordance with the Plan. The Liquidating Trustee may retain counsel and/or other professionals as may be reasonably necessary to carry out its obligations under the Plan and shall be authorized to reimburse counsel and any such other professionals for such professionals' reasonable fees and expenses in accordance with the provisions of Paragraph 12.2 of Article XII of the Plan and the Bankruptcy Code. The Debtors shall not have any liability for any such fees and expenses.~~

The Litigation Trustee shall have the authority set forth in this Plan until all distributions required to be made to holders of Allowed Class 2, 3 and 4 Claims and Interests have been made in accordance with the Plan. The Litigation Trustee may retain counsel and/or other professionals as may be reasonably necessary to carry out its obligations under the Plan and shall be authorized to reimburse counsel and any such other professionals for such professionals' reasonable fees and expenses in accordance with the provisions of Paragraph 12.2(a) of Article XII of the Plan and the Bankruptcy Code. The Debtors shall not have any liability for any such fees and expenses.

~~The Liquidating Trustee is expressly given discretion~~to decide which actions to bring and ~~which actions not to bring in relation to the~~The Litigation Trustee is expressly given discretion and authority to decide which actions to bring and which actions not to bring in relation to the Third Party Claims, Avoidance Claims ~~and the~~, Commercial Tort Claims and other Litigation Trust Assets. The ~~Liquidating~~ Litigation Trustee is expressly granted the power to settle any such actions, either before or after suit is brought. Furthermore, the ~~Liquidating~~ Litigation Trustee is expressly authorized to liquidate or otherwise administer the ~~Debtors' assets~~ Litigation Trust Assets in a reasonable manner and to pursue claims or causes of action as may be necessary for such purpose.

## ii.    Compensation of ~~Liquidating~~ Litigation Trustee

The ~~Liquidating~~ Litigation Trustee shall be entitled to compensation from the Non-Lender Proceeds on account of his service pursuant to the terms of the ~~Liquidating~~ Litigation Trust Agreement[7] approved by the Bankruptcy Court, provided however, that nothing ~~herein~~ in the Plan shall preclude the ~~Liquidating~~ Litigation Trustee from engaging counsel and any such other professionals as may be reasonably necessary to carry out its obligations under the Plan.

## iii.    Authorization, Empowerment, Rights and Duties of ~~Liquidating~~ Litigation Trustee

(a)    The ~~Liquidating~~ Litigation Trustee shall be authorized and empowered to preserve, protect and maximize the value of the ~~choses in action~~Litigation Trust Assets, as promptly and efficiently as is reasonably possible, and distribute all income and proceeds therefrom in accordance with the terms of the Plan.

---

[7]    ~~The Liquidating Trust Agreement shall be filed with the Bankruptcy Court at least ten (10) days before the Confirmation Hearing.~~

(b)     The ~~Liquidating~~ Litigation Trustee may engage such attorneys, accountants and other professionals as are reasonably required to effectively and efficiently perform his responsibilities under the Plan and shall pay the reasonable fees, charges and expenses of such attorneys, accountants and other professionals who provide services after the Effective Date as an expense.  The ~~Liquidating~~ Litigation Trustee may retain professionals who were retained by the Debtors or any Committee during the Case.

(c)     The ~~Liquidating~~ Litigation Trustee shall have the right ~~and  duty~~ at his discretion to examine all rights of action, including, without limitation, the Third Party Claims, Avoidance Claims and Commercial Tort Claims and file, litigate to final judgment, settle, withdraw or otherwise resolve such rights of action.

(d)     The Litigation Trustee shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in these Chapter 11 Cases, under the Plan or in any judicial proceeding or appeal to which any of the Debtors is a party and is appointed as the representative of the Estates for all purposes, including for the commencement, retention and enforcement of all claims and rights, known and unknown, which arose prior to the Effective Date, including the Third Party Claims, Avoidance Claims and Commercial Tort Claims but excluding the Plan Trust Assets.

~~(d)The Liquidating~~ (e)The Litigation Trustee shall have the right and duty to examine all Claims, not previously allowed as of the Effective Date, including, but not limited to, pursuant to Article XIII of the Plan, and file, litigate to final judgment, settle, withdraw or otherwise resolve objections to such Claims.

(~~e~~f)     Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the ~~Liquidating~~ Litigation Trustee shall have authority to settle (i) all Third Party Claims, Avoidance Claims and Commercial Tort Claims on behalf of the Estate ~~and~~, (ii) all Claims, not previously allowed as of the Effective Date, without further review or approval of the Bankruptcy Court and (iii) all issues or matters related to the liquidation or administration of the Litigation Trust Assets.

(~~f~~g)     The ~~Liquidating~~ Litigation Trustee shall make distributions under the Plan as often as in the ~~Liquidating~~ Litigation Trustee's discretion and judgment there is an amount of funds sufficient to make a meaningful distribution to holders of Class ~~1, 2~~2 (other than the Lender Reserve Amount), 3 and/or 4.  In making such determinations, the ~~Liquidating~~ Litigation Trustee shall exclude from distributions amounts of Cash necessary to meet other obligations of the ~~Liquidating~~ Litigation Trust and/or the ~~Liquidating~~ Litigation Trustee, held for withholding Taxes or other charges, or otherwise needed to pay the present or future expenses, debts, charges, liabilities and obligations of the ~~Liquidating~~ Litigation Trust and/or the ~~Liquidating~~ Litigation Trustee in accordance with the terms of the Plan..

(~~g~~h)     The ~~Liquidating~~ Litigation Trustee may resign by giving written notice of his resignation to the Bankruptcy Court, the twenty largest unsecured creditors, the Committee, the Office of the United States Trustee, the Lender and all parties who filed notices of appearance and requests for service of pleadings in this Case.  Unless the Bankruptcy Court (on motion of any party) orders otherwise, (i) such resignation shall become effective on the date on which the

Bankruptcy Court appoints a successor ~~Liquidating~~ Litigation Trustee or a replacement ~~Liquidating~~ Litigation Trustee is appointed pursuant to the terms of the ~~Liquidating~~ Litigation Trust Agreement and (ii) the ~~Liquidating~~ Litigation Trustee shall be entitled to compensation up to the date on which the ~~Liquidating~~ Litigation Trustee's resignation becomes effective.

(~~h~~i) The ~~Liquidating~~ Litigation Trustee shall retain and may enforce any and all claims, causes of action and rights of the Debtors or the Estate, including, without limitation, Third Party Claims, Avoidance Claims and Commercial Tort Claims and the right to seek the subordination of Claims~~,~~ not previously Allowed as of the Effective Date, under Bankruptcy Code Section 510.

(~~i~~j) The ~~Liquidating~~ Litigation Trustee shall be authorized to take any and all necessary actions to comply with the requirements of any taxing authorities, including in connection with its duties pursuant to Paragraph 12.4 of the Plan, including, but not limited to, (i) compile, draft and file any necessary local, state and federal Tax returns on behalf of the Debtors and the ~~Liquidating~~ Litigation Trust and (ii) obtain any necessary tax identification numbers.

~~iv.     Participation by the Liquidating Trustee~~
(k) The Litigation Trustee shall be authorized and directed to take any and all necessary actions to comply with its duties in the Plan in connection with the wind-down of the remainder of the Debtors' business, distributions pursuant to Paragraphs 6.1, 7.3 and 7.4 (other than the Lender Reserve Amount) of the Plan, the liquidation or other administration of certain related assets and pursuant to Paragraph 18.2 of the Plan, including, but not limited to, (i) compile, draft and file any necessary local, state and federal Tax returns on behalf of the Debtors, (ii) compile, draft and file any necessary local, state and federal forms dissolving the Debtor entities, (iii) administer any and all retirement plans or other employee benefit plans sponsored by the Debtors, including, without limitation, the ESOP and 401(k) Plan.

iv.     Participation by the Litigation Trustee

~~The Liquidating Trustee shall have the right~~ The Litigation Trustee shall have the right and requisite standing to participate in any (i) hearings on proposed modifications or amendments to the Plan, notwithstanding the provisions of Bankruptcy Code Section 1127, (ii) actions to enforce or interpret the Plan, ~~and~~ (iii) proceedings regarding Disputed ~~Class 3~~ Claims and (iv) matters related to the Litigation Trust Assets.

v.     Investments of Cash Pending Distributions

Any Cash recovered by the ~~Liquidating~~ Litigation Trustee in satisfying its obligations hereunder, shall be invested as the ~~Liquidating~~ Litigation Trustee determines is reasonable.

vi.     Limitation of Liability of the ~~Liquidating~~ Litigation Trustee

The ~~Liquidating~~ Litigation Trustee and its ~~counsel~~ professionals are hereby exculpated ~~under the Plan~~ by holders of Claims and Interests from any and all claims, causes of action and other assertions of liability (including breach of fiduciary duty) arising out of the discharge by

the ~~Liquidating~~ Litigation Trustee of the powers and duties conferred upon him, her or it by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the gross negligence, willful misconduct or fraud of the ~~Liquidating~~ Litigation Trustee or its ~~counsel~~professionals. No current holder of a Claim or Interest, or representative thereof, or other party in interest shall have or pursue any claim or cause of action against the ~~Liquidating~~ Litigation Trustee or its ~~counsel~~ professionals for making payments or distributions in accordance with the Plan.

The ~~Liquidating~~ Litigation Trustee and any supplemental ~~Liquidating~~ Litigation Trustee and its members, agents, representatives, employees and professionals shall not be liable to the Debtors, creditors or any other ~~Entity~~ Person, entity or party in interest for any error of judgment made in good faith, but only for gross negligence, willful misconduct or fraud. The ~~Liquidating~~ Litigation Trustee shall not be liable for any action taken or omitted in good faith and believed by it to be authorized within the discretion or rights or powers conferred upon it by the Plan. The ~~Liquidating~~ Litigation Trustee makes no representation as to the value or condition of the Debtors' assets or any part thereof, or as to the security afforded by the Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of the Plan and the ~~Liquidating~~ Litigation Trustee shall incur no liability or responsibility with respect to such matters. In performing its duties under the Plan, the ~~Liquidating~~ Litigation Trustee may retain and consult with counsel selected by it and shall have no liability for any action taken upon the advice of such counsel. None of the provisions of the Plan shall require or be construed as requiring the ~~Liquidating~~ Litigation Trustee to expend or risk its own funds or otherwise incur or expose it to personal financial liability in the performance of any of its duties under the Plan or in the exercise of any of its rights and powers. The ~~Liquidating~~ Litigation Trustee may rely without inquiry upon any writing delivered to it pursuant to the Plan which it believes in good faith to be genuine and to have been given by a proper Person. The ~~Liquidating~~ Litigation Trustee shall be indemnified and receive reimbursement from the Estate and the ~~Liquidating~~ Litigation Trust against and from any and all loss, liability or damage, including payment of attorneys' fees and other costs of defending itself, which it may incur or sustain, other than as a result of gross negligence, willful misconduct or fraud in the exercise and performance of its duties hereunder and under the Plan.

      vii.    Certain Records

~~Upon written request to the Estate, which requests shall be reasonable in scope and related to the duties of the Liquidating Trustee, it shall (at no material cost or expense to the Estate) be afforded reasonable access (with no obligation on the part of the Estate to advance photocopying or other costs related to the Liquidating Trustee's efforts) to the pre-Effective Date records of the Debtors.~~

~~    viii.   Termination of the Liquidating Trust and Liquidating Trustee~~

On the Effective Date, the Debtors shall transfer all of the Debtors' books and records to the Litigation Trust. The Litigation Trustee shall maintain such books and records until the earlier of: (i) a final decree has been entered in accordance with Paragraph 18.12 of the Plan and (ii) three (3) years from the filing of the Debtors' final local, state and federal Tax returns. Thereafter, said books and records may be destroyed or otherwise disposed of, provided that twenty (20) days prior notice of such intention to dispose of the books and records shall be

provided to the Person on the then-current Bankruptcy Rule 2002 service list maintained in the Chapter 11 Case. If the Litigation Trustee seeks to destroy or otherwise dispose of any such books and records prior to the time periods set forth in the Plan, the Litigation Trustee shall be entitled to do so upon order of the Bankruptcy Court obtained on motion and twenty (20) days negative notice to the then-current Bankruptcy Rule 2002 service list maintained in the Chapter 11 Case.

    viii.   Termination of the Litigation Trust and Litigation Trustee

Upon substantial completion of its functions as designated in the Plan, the ~~Liquidating~~ Litigation Trustee shall be discharged and the ~~Liquidating~~ Litigation Trust shall be terminated.

~~D.Plan Distribution Provisions~~
~~i.Distributions to Liquidating TrusteeOn the Effective Date, the Debtors shall make any available distributions to the Liquidating Trustee for (i) distributions to holders of Allowed Class 1, 2, 3 and/or 4 Claims and(ii) sufficient Cash to make the distributions required by the Plan to be madeon the Effective Date.~~
~~ii.   Distributions~~

~~(a)Liquidating Trustee.~~
~~The Liquidating Trustee shall be solely responsible for making all of the distributions under the Plan including distributions (i) to holders of Allowed Administrative Claims; (ii) Allowed Priority Claims; (iii) Allowed Class 1, 2, 3 and 4 Claims according to the terms of the Plan and (iv) required to be made on the Effective Date of the Plan.~~
~~All costs and expenses in connection with such distributions made by the Liquidating Trustee, including, without limitation, the fees and expenses of the Liquidating Trustee and its professionals, shall be borne solely out of Non-Lender Proceeds; provided, however, to the extent any such fees and expenses are incurred directly in connection with the liquidation and distribution of any Collateral to be distributed to the Lender pursuant to Paragraphs 7.2 or 7.3 of the Plan, such direct fees and expenses may be charged ratably to the applicable Collateral.~~
~~(b)Dates of Distributions.~~
D.   Means for Execution and Implementation of the Plan – the Plan Trust

    i.   Plan Trust

    On the Effective Date, a newly-formed Delaware trust with no prior assets or liabilities shall be created to make certain distributions pursuant to Paragraph 7.2 of the Plan and to the Litigation Trust for the benefit of Class 3 Claims under Paragraph 7.4 of the Plan and liquidate or otherwise administer certain related assets (the "Plan Trust"). Craig R. Jalbert, CIRA or another Person designated by the Lender, and as reasonably acceptable to the Debtors and the Committee, shall be appointed as the Plan Trustee and shall serve as the trustee of the Plan Trust with the rights and duties set forth in Article XI of the Plan and otherwise in the Plan. For the avoidance of doubt, the Plan Trustee, on the Effective Date, shall have the sole authority to administer the Plan Trust Assets.

ii.     Transfers to the Plan Trust

On the Effective Date, the Debtors and the Estate shall transfer and shall be deemed to have irrevocably transferred to the Plan Trust all of the Plan Trust Assets (but subject to all rights, defenses and setoffs of any party-in-interest including the Litigation Trustee).

iii.     Liquidation of Assets

The Plan Trustee shall be authorized to liquidate or otherwise administer the Plan Trust Assets and shall make distributions of such Cash proceeds as provided in Paragraph 7.2 of the Plan and to the Litigation Trust for the benefit of Class 3 Claims under Paragraph 7.4 of the Plan.

E.     Plan Trustee

i.     Authority of the Plan Trustee

The Plan Trustee shall have the authority set forth in this Plan until the Plan Trust Assets have been liquidated or otherwise administered and distributions required to be made to holders of Allowed Class 1 Claims and to the Litigation Trust for the benefit of Allowed Class 3 Claims have been made from the proceeds of such Plan Trust Assets. The Plan Trustee may retain counsel and/or other professionals as may be reasonably necessary to carry out its obligations under the Plan and shall be authorized to reimburse counsel and any such other professionals for such professionals' reasonable fees and expenses in accordance with the provisions of Paragraph 12.2(b) of Article XII of the Plan and the Bankruptcy Code. The Debtors shall not have any liability for any such fees and expenses.

Furthermore, the Plan Trustee is expressly authorized to liquidate or otherwise administer the Plan Trust Assets in a reasonable manner and to pursue claims or causes of action as may be necessary for such purpose.

ii.     Compensation of Plan Trustee

The Plan Trustee shall be entitled to compensation from the Lender Proceeds on account of his service pursuant to the terms of the Plan Trust Agreement approved by the Bankruptcy Court, provided however, that nothing in the Plan shall preclude the Plan Trustee from engaging counsel and any such other professionals as may be reasonably necessary to carry out its obligations under the Plan.

iii.     Authorization, Empowerment, Rights and Duties of Plan Trustee

(a)     The Plan Trustee shall be authorized and empowered to preserve, protect and maximize the value of the Plan Trust Assets, as promptly and efficiently as is reasonably possible, and distribute all income and proceeds therefrom in accordance with the terms of the Plan.

(b)     The Plan Trustee may engage such attorneys, accountants and other professionals as are reasonably required to effectively and efficiently perform his responsibilities under the

Plan and shall pay the reasonable fees, charges and expenses of such attorneys, accountants and other professionals who provide services after the Effective Date as an expense. The Plan Trustee may retain professionals who were retained by the Debtors or any Committee during the Case.

(c)     The Plan Trustee shall make distributions under the Plan as often as in the Plan Trustee's ~~All distributions required to be made in the Plan shall be made on the Plan Distribution Date. Any distribution required to be made on the Effective Date shall be deemed to be made on such date if made as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any distribution required to be made on the date on which a Claim becomes an Allowed Claim shall be deemed to be made on such date if made as soon as practicable after such date and, in any event, within thirty (30) days after such date. The Liquidating Trustee shall make distributions as often as in its respective~~discretion and judgment there is an amount of funds ~~in the Debtors~~ sufficient to make a meaningful distribution to holders of Class 1 and to the Litigation Trust on account of Class 3. In making such determinations, the ~~Liquidating~~ Plan Trustee shall exclude from distributions amounts of Cash necessary to meet other obligations of the ~~Liquidating~~ Plan Trust and/or the ~~Liquidating~~ Plan Trustee, held for withholding Taxes or other charges, or otherwise needed to pay the present or future expenses, debts, charges, liabilities and obligations of the ~~Liquidating~~ Plan Trust and/or the ~~Liquidating~~ Plan Trustee in accordance with the terms of the Plan~~; provided, however, no such amounts shall be withheld from the proceeds of Collateral to be distributed to the Lender except as provided in Paragraph 12.2(a) of the Plan.(~~e.

(d)     The Plan Trustee may resign by giving written notice of his resignation to the Bankruptcy Court, the twenty largest unsecured creditors, the Committee, the Office of the United States Trustee, the Lender and all parties who filed notices of appearance and requests for service of pleadings in this Case. Unless the Bankruptcy Court (on motion of any party) orders otherwise, (i) such resignation shall become effective on the date on which the Bankruptcy Court appoints a successor Plan Trustee or a replacement Plan Trustee is appointed pursuant to the terms of the Plan Trust Agreement and (ii) the Plan Trustee shall be entitled to compensation up to the date on which the Plan Trustee's resignation becomes effective.

(e)     The Plan Trustee shall be authorized to take any and all necessary actions to comply with the requirements of any taxing authorities, including in connection with its duties pursuant to Paragraph 12.4 of the Plan, including, but not limited to, (i) compile, draft and file any necessary local, state and federal Tax returns on behalf of the Debtors and the Plan Trust and (ii) obtain any necessary tax identification numbers.

iv.     Participation by the Plan Trustee

The Plan Trustee shall have the right and requisite standing to participate in any (i) hearings on proposed modifications or amendments to the Plan, notwithstanding the provisions of Bankruptcy Code Section 1127, (ii) actions to enforce or interpret the Plan, (iii) proceedings regarding Disputed Claims and (iv) matters related to the Plan Trust Assets.

v.     Investments of Cash Pending Distributions

Any Cash recovered by the Plan Trustee in satisfying its obligations hereunder, shall be invested as the Plan Trustee determines is reasonable.

vi.     Limitation of Liability of the Plan Trustee

The Plan Trustee and its professionals are hereby exculpated by holders of Claims and Interests from any and all claims, causes of action and other assertions of liability (including breach of fiduciary duty) arising out of the discharge by the Plan Trustee of the powers and duties conferred upon him, her or it by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the gross negligence, willful misconduct or fraud of the Plan Trustee or its professionals. No current holder of a Claim or Interest, or representative thereof, or other party in interest shall have or pursue any claim or cause of action against the Plan Trustee or its professionals for making payments or distributions in accordance with the Plan.

The Plan Trustee and any supplemental Plan Trustee and its members, agents, representatives, employees and professionals shall not be liable to the Debtors, creditors or any other Person, entity or party in interest for any error of judgment made in good faith, but only for gross negligence, willful misconduct or fraud. The Plan Trustee shall not be liable for any action taken or omitted in good faith and believed by it to be authorized within the discretion or rights or powers conferred upon it by the Plan. The Plan Trustee makes no representation as to the value or condition of the Debtors' assets or any part thereof, or as to the security afforded by the Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of the Plan and the Plan Trustee shall incur no liability or responsibility with respect to such matters. In performing its duties under the Plan, the Plan Trustee may retain and consult with counsel selected by it and shall have no liability for any action taken upon the advice of such counsel. None of the provisions of the Plan shall require or be construed as requiring the Plan Trustee to expend or risk its own funds or otherwise incur or expose it to personal financial liability in the performance of any of its duties under the Plan or in the exercise of any of its rights and powers. The Plan Trustee may rely without inquiry upon any writing delivered to it pursuant to the Plan which it believes in good faith to be genuine and to have been given by a proper Person. The Plan Trustee shall be indemnified and receive reimbursement from the Estate and the Plan Trust against and from any and all loss, liability or damage, including payment of attorneys' fees and other costs of defending itself, which it may incur or sustain, other than as a result of gross negligence, willful misconduct or fraud in the exercise and performance of its duties hereunder and under the Plan.

vii.     Certain Records

)Manner of Payment.Upon written request to the Litigation Trustee, which requests shall be reasonable in scope and related to the duties of the Plan Trustee, it shall (at no material cost or expense to the Litigation Trustee) be afforded reasonable access (with no obligation on the part of the Litigation Trustee to advance photocopying or other costs related to the Plan Trustee's efforts) to the pre-Effective Date records of the Debtors transferred to the Litigation Trustee pursuant to Paragraph 10.11 of the Plan.

viii.     Termination of the Plan Trust and Plan Trustee

Upon substantial completion of its functions as designated in the Plan, the Plan Trustee shall be discharged and the Plan Trust shall be terminated. For the avoidance of doubt, upon termination of the Plan Trust and after all costs and expenses of the Plan Trust have been paid and after all distributions have been made by the Plan Trustee in accordance with its duties in the Plan, any remaining proceeds shall be distributed to the Litigation Trustee to distribute or otherwise dispose in accordance with the Litigation Trustee's duties under the Plan.

F. Plan Distribution Provisions

i. Distributions to Litigation Trustee and Plan Trustee

(a) On the Effective Date, the Debtors shall make any available distributions to the Litigation Trustee for (i) distributions to holders of Allowed Class 2, 3 and/or 4 Claims and Interests and (ii) sufficient Cash to make the distributions required by the Plan to be made on the Effective Date. Furthermore, the Debtors shall be deemed to have transferred the Litigation Trust Assets to the Litigation Trust on the Effective Date.

(b) On the Effective Date, the Debtors shall (i) distribute the Lender Reserve Amount to the Lender in accordance with Paragraph 7.3 of the Plan and (ii) make any available distributions to the Plan Trustee for distributions to holders of Allowed Class 1 Claims. Furthermore, the Debtors shall be deemed to have transferred the Plan Trust Assets to the Plan Trust on the Effective Date.

ii. Distributions

(a) Litigation Trustee.

The Litigation Trustee shall be solely responsible for making distributions out of proceeds of the Litigation Trust Assets or Cash provided pursuant to Paragraph 12.1(a) of the Plan in accordance with the Plan to holders of: (i) Allowed Administrative Claims including Allowed Professional Fee Claims; (ii) Allowed Priority Claims; (iii) Allowed Class 2, 3 and 4 Claims and Interests according to the terms of the Plan and (iv) Allowed Claims otherwise requiring distributions on the Effective Date of the Plan.

All costs and expenses in connection with such distributions made by the Litigation Trustee, including, without limitation, the fees and expenses of the Litigation Trustee and its professionals, shall be borne solely out of Non-Lender Proceeds.

Notwithstanding anything to the contrary in the Plan, the Litigation Trustee shall retain and reserve sufficient Cash in its reasonable estimation for unpaid Professional Fee Claims and claims for post-Effective Date fees and expenses described in Paragraph 18.11(b) of the Plan. Following the completion of the procedures set forth in Paragraph 4.2 of the Plan and all distributions by the Litigation Trustee on account of any Allowed Professional Fee Claims and post-Effective Date fees and expenses pursuant to Paragraph 18.11(b) of the Plan, the Litigation

Trustee shall otherwise distribute any unused balance of such reserve in accordance with its obligations in accordance with the Plan.

(b)     Plan Trustee.

The Plan Trustee shall be solely responsible for making distributions out of proceeds of the Plan Trust Assets in accordance with the Plan to holders of Allowed Class 1 Claims and to the Litigation Trust for the benefit of Allowed Class 3 Claims.

All costs and expenses in connection with or directly related to pursuing, defending, recovering or otherwise administering Plan Trust Assets, including, without limitation, the fees and expenses of the Plan Trustee and its professionals, shall be borne solely out of the Lender Proceeds; provided, however, all costs and expenses in connection with establishing and maintaining the Plan Trust shall be borne solely out of the portion of the Lender Proceeds allocable to the Lender.

(c)     Net Recovery.

For the avoidance of doubt, any recoveries of proceeds of Collateral or Non-Collateral, whether before or after the Effective Date, for the benefit of Allowed Class 1, 2, 3 or 4 Claims and Interests shall be distributed in accordance with the terms of this Plan net of any fees and expenses (including professional fees) incurred in connection with such recoveries.

(d)     Dates of Distributions.

All distributions required to be made in the Plan shall be made on the Plan Distribution Date. Any distribution required to be made on the Effective Date shall be deemed to be made on such date if made as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any distribution required to be made on the date on which a Claim becomes an Allowed Claim shall be deemed to be made on such date if made as soon as practicable after such date and, in any event, within thirty (30) days after such date.

The Litigation Trustee and the Plan Trustee, respectively, shall make distributions as often as in its respective discretion and judgment there is an amount of funds in the Debtors sufficient to make a meaningful distribution. In making such determinations, the Litigation Trustee and the Plan Trustee, respectively, shall exclude from distributions amounts of Cash necessary to meet other obligations of the Litigation Trust and/or the Litigation Trustee and the Plan Trust and/or the Plan Trustee, respectively, held for withholding Taxes or other charges, or otherwise needed to pay the present or future expenses, debts, charges, liabilities and obligations of the Litigation Trust and/or the Litigation Trustee and the Plan Trust and/or the Plan Trustee, respectively, in accordance with the terms of the Plan.

(e)     Manner of Payment.

~~At the option of the Liquidating Trustee,~~ At the option of the Litigation Trustee and the Plan Trustee, respectively, with respect to the distributions to be made by it, distributions may be made in Cash, by wire transfer or by a check drawn on a domestic bank.

~~(d)Minimum Distributions.~~
~~Notwithstanding anything to the contrary contained in the Plan, the Liquidating Trustee shall not be obligated to make any distribution to the holder of an Allowed Claim or Interest in the aggregate amount of $10.00 or less. To the extent Cash remains undistributed as a result of Paragraph 12.2(d) of the Plan, such Cash shall be treated as "Unclaimed Property" under Paragraph 12.5(d) of the Plan.~~

~~iii.  Rounding of Payments~~
~~Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as "Unclaimed Property" under Paragraph 12.5(d) of the Plan.~~

~~iv.  Compliance with Tax Requirements~~
~~The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.~~

~~v.  Undeliverable Distributions, Voided Checks and Distribution of Unclaimed Property~~

~~(a)If any distribution by the Liquidating Trustee to the holder of an Allowed Claim or Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies the Liquidating Trustee in writing, in accordance with Paragraph 18.4 of the Plan, of such holder's then-current address, at which time all missed distributions shall, subject to Paragraph 12.5(d) of the Plan, be made as soon as is practicable to such holder, without interest.~~

~~(b)Checks issued by or on behalf of the Liquidating Trustee in respect of Allowed Claims or Interests shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Requests for re-issuance of any check shall be made in accordance with the notice provisions of Paragraph 18.4 of the Plan by the holder of the Allowed Claim or Interest to whom such check was originally issued. No further distributions to such holder shall be made unless and until the holder notifies the Liquidating Trustee in writing of such holder's claim for the voided check, at which time and as soon as is practicable, subject to Paragraph 12.5(d) of the Plan, a check shall be re-issued to such holder, without interest.~~

(f)  Minimum Distributions.

Notwithstanding anything to the contrary in the Plan, the Litigation Trustee and the Plan Trustee, respectively, shall not be obligated to make any distribution to the holder of an Allowed Claim or Interest in the aggregate amount of $20.00 or less. To the extent Cash remains undistributed as a result of Paragraph 12.2(f) of the Plan, such Cash shall be treated as "Unclaimed Property" under Paragraph 12.5(d) of the Plan.

### iii. Rounding of Payments

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as "Unclaimed Property" under Paragraph 12.5(d) of the Plan.

### iv. Compliance with Tax Requirements

The Litigation Trustee and the Plan Trustee, respectively, shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.

### v. Undeliverable Distributions, Voided Checks and Distribution of Unclaimed Property

(a)   If any distribution by the Litigation Trustee or the Plan Trustee, respectively, to the holder of an Allowed Claim or Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies the Litigation Trustee of the Plan Trustee, as the case may be, in writing, in accordance with Paragraph 18.4 of the Plan, of such holder's then-current address, at which time all missed distributions shall, subject to Paragraph 12.5(d) of the Plan, be made as soon as is practicable to such holder, without interest.

(b)   Checks issued by or on behalf of the Litigation Trustee or the Plan Trustee, respectively, in respect of Allowed Claims or Interests shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Requests for re-issuance of any check shall be made in accordance with the notice provisions of Paragraph 18.4 of the Plan by the holder of the Allowed Claim or Interest to whom such check was originally issued. No further distributions to such holder shall be made unless and until the holder notifies the Litigation Trustee or the Plan Trustee, as the case may be, in writing of such holder's claim for the voided check, at which time and as soon as is practicable, subject to Paragraph 12.5(d) of the Plan, a check shall be re-issued to such holder, without interest.

(c)Notwithstanding anything to the contrary herein(c)   Notwithstanding anything to the contrary in the Plan, nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate the holder of an Allowed Claim or Interest which is the subject of an undeliverable distribution or voided check.Litigation Trustee or Plan Trustee to attempt to locate the holder of an Allowed Claim or Interest which is the subject of an undeliverable distribution or voided check.

(d)   All claims for undeliverable distributions or voided checks shall be made on or before one hundred and fifty (150) days after the date such undeliverable distribution or check was initially made or issued, respectively. After such dates, all such distributions shall be deemed Unclaimed Property under Bankruptcy Code Section 347(b). The holder of any Claim or Interest for which an undeliverable distribution or voided check has been deemed Unclaimed Property shall not be entitled to any other or further distribution under the Plan on account of

such Claim or Interest. The Unclaimed Property shall be set aside and held in a segregated interest-bearing account to be maintained by the Litigation Trustee or the Plan Trustee, as the case may be, with respect to undeliverable distributions and voided checks. Unclaimed Property may be deposited into a single account for all Unclaimed Property (meaning separate accounts are not necessary for each claimant's unclaimed distribution). Any such Unclaimed Property and accrued interest or dividends earned thereon shall become the property of, and shall be released to, the Litigation Trustee or the Plan Trustee, as the case may be, to be applied to payment of any Allowed Claims or Interests that have not yet been paid in accordance with the terms of the Plan; or, if all such Allowed Claims or Interests have been satisfied, then to the Litigation Trustee or the Plan Trustee, as the case may be, and in the event the Litigation Trustee or the Plan Trustee, as the case may be, has been discharged, then such funds shall be donated to a charity selected by the Litigation Trustee.

vi.     Setoff

The Litigation Trustee may, but is not required to, set off against any Claim and the distribution to be made pursuant to the Plan in respect of such Claim, any claims of any nature which the Estate may have against the holder of such Claim. Neither the failure by the Litigation Trustee or the Estate to affect such a setoff nor the allowance of any Claim shall constitute a waiver or a release of any claim which the Estate may have against the holder of a Claim.

G.      Procedures for Resolving Objections to Claims

i.      Objections to Claims

Prior to the Effective Date, the Debtors shall be responsible for pursuing any objection to the allowance of any Claim including, without limitation, pursuant to Paragraph 4.2 of the Plan and Article XIII of the Plan. From and after the Effective Date, the Litigation Trustee shall be solely responsible for pursuing any objection to the allowance of any and all Claims including, without limitation, pursuant to Paragraph 4.2 of the Plan and Article XIII of the Plan.

Unless another date is established by the Bankruptcy Court, any objection to a Claim shall be filed with the Bankruptcy Court and served on the Person holding such Claim within one hundred eighty (180) days of the Effective Date ("Claims Objection Bar Date"). The Litigation Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of such dates if a complete review of all Claims cannot be completed by such date.

ii.     Treatment of Disputed Claims

(a)     No Distribution Pending Allowance.

If any portion of a Claim is a Disputed Claim, no payment or distribution provided for under the Plan shall be made on account of the portion of such Claim that is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, but the payment or distribution provided for under the Plan shall be made on account of the portion of such Claim that is an Allowed Claim.

(b)     Distribution After Allowance.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after such date, the Litigation Trustee shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if such Claim had been an Allowed Claim on the Effective Date.

(c)     Reserves for Disputed Claims.

In the event that Disputed Claims are pending, the Litigation Trustee shall establish reasonable reserves for such Disputed Claims, and the aggregate property to be distributed to holders of Allowed Claims on any Plan Distribution Date shall be adjusted to reflect such reserves.

iii.     Administrative Claims

The resolution of Administrative Claims shall be governed by Paragraph 4.2 of the Plan.

iv.     Professional Fee Claims

The resolution of Professional Fee Claims shall be governed by Paragraph 4.2 of the Plan.

v.     Subordinated Claims

Subordinated Equity Claims are subordinated pursuant to Bankruptcy Code Section 510(b) for purposes of distribution under the Plan in accordance with Paragraph 6.1 of the Plan.

H.     Effects of Plan Confirmation

i.     Binding Effect of Confirmation

Confirmation will bind the Debtors, all holders of Claims or Interests and all other parties in interest to the provisions of the Plan whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not the holder of such Claim or Interest has accepted the Plan.

ii.     Good Faith

Confirmation of the Plan shall constitute a finding that: (i) this Plan has been proposed by the Debtors in good faith and in compliance with applicable provisions of the Bankruptcy Code and (ii) all Persons' solicitations of acceptances or rejections of this Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

iii.     Injunction

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a debt, Claim or Interest discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt, Claim or Interest: (i) commencing or continuing in any manner any action or other proceeding against the Debtors, their successors or their respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, their successors or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors, their successors or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtors, their successors or their respective property; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

### iv.    Exculpation and Limitation of Liabilities

**To the maximum extent permitted by law, none of the Debtors, the Estate, the Litigation Trustee, the Plan Trustee, nor any of their employees, officers, directors, agents, members, representatives or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, an "Exculpated Person"), shall have or incur liability to any Person for any act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement or a contract, instrument, release or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan or the consummation and implementation of the Plan and the transactions contemplated therein. Each Exculpated Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan. Entry of the Confirmation Order constitutes a judicial determination that the exculpation provision contained in this Paragraph is necessary to, *inter alia*, facilitate confirmation and to minimize potential claims arising after the Effective Date. The Confirmation Order's approval of the Plan also constitutes a *res judicata* determination of the matters included in the exculpation provisions of the Plan.**

### v.    Release of Lender by Debtors, Litigation Trustee and Plan Trustee

**Except as otherwise provided for in the Plan or in the Confirmation Order, all consideration distributed under the Plan and the Claim treatment agreed to by Lender as described in Article VII of the Plan, shall be in exchange for, and in complete satisfaction, settlement, and release of all claims or causes of action of any nature whatsoever by the Debtors, the Estate, the Litigation Trustee or the Plan Trustee against Lender and Lender shall be deemed so released from any such claim which existed, whether known or unknown, as of the Effective Date of the Plan. The Debtors, the Estate, the Litigation Trustee and the Plan Trustee shall each be precluded and permanently enjoined from**

**asserting against the Lender, its assets and properties, any Claims, debts or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.**

I.     Conditions to Effectiveness

      i.     Conditions Precedent to Plan Effectiveness

It shall be a condition precedent to the effectiveness of the Plan that:

(a)     the Confirmation Order shall have been entered;

(b)     no stay of the Confirmation Order shall be in effect; and

(c)     all other agreements and instruments contemplated by, or to be entered into pursuant to, the Plan, shall have been duly and validly executed and delivered to the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

      ii.     Waiver of Conditions

Each of the conditions precedent specified in Paragraph 15.1 of the Plan may be only be waived by the Debtors.

J.     Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from or relating to, the Case pursuant to Bankruptcy Code Section 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)     to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

(b)     to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtors or the Estate;

(c)     to hear and determine any motions pending on the Effective Date to reject any executory contract or unexpired lease and to determine the allowance of any Claim resulting therefrom;

(d)     to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtors' assets wherever located;

(e)     to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

(f)     to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

(g)     to hear and determine any motions or contested matters involving Taxes, Tax refunds, Tax attributes and Tax benefits and similar and related matters with respect to the Debtors arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local Taxes in accordance with Bankruptcy Code Sections 346, 505 and 1146;

(h)     to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date or that may be commenced thereafter as provided in the Plan;

~~(d)All claims for undeliverable distributions or voided checks shall be made on or before one hundred and fifty (150) days after the date such undeliverable distribution or check was initially made or issued, respectively.  After such dates, all such distributions shall be deemed Unclaimed Property under Bankruptcy Code Section 347(b).  The holder of any Claim or Interest for which an undeliverable distribution or voided check has been deemed Unclaimed Property shall not be entitled to any other or further distribution under the Plan on account of such Claim or Interest. The Unclaimed Property shall be set aside and held in a segregated interest-bearing account to be maintained by the Liquidating Trustee with respect to undeliverable distributions and voided checks.  Unclaimed Property may be deposited into a single account for all Unclaimed Property (meaning separate accounts are not necessary for each claimant's unclaimed distribution).  Any such Unclaimed Property and accrued interest or dividends earned thereon shall become the property of, and shall be released to, the Liquidating Trustee, to be applied to payment of any Allowed Claims or Interests that have not yet been paid in accordance with the terms of the Plan; or, if all such Allowed Claims or Interests have been satisfied, then to the Liquidating Trustee, and in the event the Liquidating Trustee has been discharged, then such funds shall be paid into the registry of funds maintained by the Bankruptcy Court.~~
~~     vi.     Setoff~~

The Liquidating Trustee may, but is not required to, set off against any Claim and the distribution to be made pursuant to the Plan in respect of such Claim, any claims of any nature which the Estate may have against the holder of such Claim. Neither the failure by the Liquidating Trustee or the Estate to affect such a setoff nor the allowance of any Claim shall constitute a waiver or a release of any claim which the Estate may have against the holder of a Claim.

E. Procedures for Resolving Objections to Claims

    i.    Objections to Claims

Prior to the Effective Date, the Debtors shall be responsible for pursuing any objection to the allowance of any Claim. From and after the Effective Date, the Liquidating Trustee shall be solely responsible for pursuing any objection to the allowance of any and all Claims.
Unless another date is established by the Bankruptcy Court, any objection to a Claim shall be filed with the Bankruptcy Court and served on the Person holding such Claim by the Claims Objection Bar Date. The Liquidating Trustee shall have the right to petition the Bankruptcy Court, without notice or a hearing, for an extension of such dates if a complete review of all Claims cannot be completed by such date.

    ii.    Treatment of Disputed Claims

    (a)    No Distribution Pending Allowance.

If any portion of a Claim is a Disputed Claim, no payment or distribution provided for under the Plan shall be made on account of the portion of such Claim that is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, but the payment or distribution provided for under the Plan shall be made on account of the portion of such Claim that is an Allowed Claim.

    (b)    Distribution After Allowance.

As soon as practicable after the date on which a Disputed Claim becomes an Allowed Claim and, in any event, within thirty (30) days after such date, the Liquidating Trustee shall distribute to the Person holding such Claim any Cash that would have been distributable to such Person if such Claim had been an Allowed Claim on the Effective Date.

    (c)    Reserves for Disputed Claims.

In the event that Disputed Claims are pending, the Liquidating Trustee shall establish reasonable reserves for such Disputed Claims, and the aggregate property to be distributed to holders of Allowed Claims on any Plan Distribution Date shall be adjusted to reflect such reserves.

    iii.    Administrative Claims

The resolution of Administrative Claims shall be governed by Paragraph 4.2 of the Plan.

    iv.    Professional Fee Claims

The resolution of Professional Fee Claims shall be governed by Paragraph 4.2 of the Plan.

## F. Effects of Plan Confirmation

### i. Binding Effect of Confirmation

Confirmation will bind the Debtors, all holders of Claims or Interests and all other parties in interest to the provisions of the Plan whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not the holder of such Claim or Interest has accepted the Plan.

### ii. Good Faith

Confirmation of the Plan shall constitute a finding that: (i) the Plan has been proposed by the Debtors in good faith and in compliance with applicable provisions of the Bankruptcy Code and (ii) all Persons' solicitations of acceptances or rejections of the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

### iii. Injunction

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a debt, Claim or Interest discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt, Claim or Interest: (i) commencing or continuing in any manner any action or other proceeding against the Debtors, their successors or their respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, their successors or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors, their successors or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtors, their successors or their respective property; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

### iv. Exculpation and Limitation of Liabilities

**To the maximum extent permitted by law, none of the Debtors, the Estate, the Liquidating Trustee, nor any of their employees, officers, directors, agents, members, representatives or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, an "Exculpated Person"), shall have or incur liability to any Person for any act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement or a contract, instrument, release or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan or the consummation and implementation of the Plan and the transactions contemplated therein. Each Exculpated Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan. Entry of the Confirmation Order constitutes a judicial**

determination that the exculpation provision contained in this Paragraph is necessary to, *inter alia*, facilitate confirmation and to minimize potential claims arising after the Effective Date. The Confirmation Order's approval of the Plan also constitutes a *res judicata* determination of the matters included in the exculpation provisions of the Plan.

v. Release of Lender by Debtors and Liquidating Trustee

Except as otherwise provided for in the Plan or in the Confirmation Order, all consideration distributed under the Plan and the Claim treatment agreed to by Lender as described in Article VII of the Plan, shall be in exchange for, and in complete satisfaction, settlement, and release of all claims or causes of action of any nature whatsoever by the Debtors, the Estate or the Liquidating Trustee against Lender and Lender shall be deemed so released from any such claim which existed, whether known or unknown, as of the Effective Date of the Plan. The Debtors, the Estate and the Liquidating Trustee shall each be precluded and permanently enjoined from asserting against the Lender, its assets and properties, any Claims, debts or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

G. Conditions to Effectiveness

i. Conditions Precedent to Plan Consummation

It shall be a condition precedent to the consummation of the Plan that:

(a)    the Confirmation Order shall have been entered;

(b)    no stay of the Confirmation Order shall be in effect; and

(c)    all other agreements and instruments contemplated by, or to be entered into pursuant to, the Plan, shall have been duly and validly executed and delivered to the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

ii.    Waiver of Conditions

Each of the conditions precedent specified in Paragraph 15.1 of the Plan may be only be waived by the Debtors.

H. Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from or relating to, the Case pursuant to Bankruptcy Code Section 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    to hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

(b)    to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtors or the Estate;

(c) to hear and determine any motions pending on the Effective Date to reject any executory contract or unexpired lease and to determine the allowance of any Claim resulting therefrom;

(d) to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtors' assets wherever located;

(e) to hear and determine any and all applications for allowance of compensation and reimbursement of expenses;

(f) to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

(g) to hear and determine any motions or contested matters involving Taxes, Tax refunds, Tax attributes and Tax benefits and similar and related matters with respect to the Debtors arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local Taxes in accordance with Bankruptcy Code Sections 346, 505 and 1146;

(h) to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date or that may be commenced thereafter as provided in the Plan;

(i)to effectuate distributions under and (i) to effectuate distributions under and performance of the provisions of the Plan;

(j) to hear and determine any applications to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(k) to correct any defect, cure any omission or reconcile any inconsistency in the Plan, the exhibits to the Plan and annexes thereto or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

(l) to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(m) to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan;

(n) to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated; including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(o) to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and

(p)      to resolve any disputes regarding fees and expenses of professionals employed by the Litigation Trustee or the Plan Trustee, respectively.

K.      Modification or Withdrawal of Plan

        i.      Modification of Plan

        At any time prior to confirmation of the Plan, the Debtors may supplement, amend or modify the Plan.

        After confirmation of the Plan, the Debtors, the Litigation Trustee or the Plan Trustee may apply to the Bankruptcy Court, pursuant to Bankruptcy Code Section 1127, to modify the Plan. After confirmation of the Plan, the Debtors, the Litigation Trustee or the Plan Trustee may apply to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan. The Plan may not be altered, amended or modified without the written consent of the Debtors, the Litigation Trustee and the Plan Trustee.

        (o)      to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; and
        (p)to resolve any disputes regarding fees and expenses of professionals employed by the Liquidating Trustee.
        I.Modification or Withdrawal of Plan
        i.      Modification of Plan

        At any time prior to confirmation of the Plan, the Debtors may supplement, amend or modify the Plan.

        After confirmation of the Plan, the Debtors or the Liquidating Trustee may apply to the Bankruptcy Court, pursuant to Bankruptcy Code Section 1127, to modify the Plan. After confirmation of the Plan, the Debtors or Liquidating Trustee may apply to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan. The Plan may not be altered, amended or modified without the written consent of the Debtors or Liquidating Trustee.
        ii.Withdrawal of ii.      Withdrawal of Plan

        The Debtors reserve the right to revoke and withdraw the Plan at any time before the Confirmation Date.

J.Other Material Provisions L.      Other Material Provisions of the Plan

i.    Resignation of Officers and Directors and Dissolution of Debtors

Upon the Effective Date, all of the Debtors' officers and directors in office immediately prior to the Effective Date shall be deemed to have resigned from their positions with the Debtors (without the necessity of any further action or writing or Bankruptcy Court order) and shall have no further responsibilities, duties and obligations arising after the Effective Date. None of the Debtors' present officers or directors shall have any liability for the acts or omissions of the Liquidating Trust or Liquidating Trustee, and each such Person will have a continuing obligation to enforce the Confirmation Order and the terms of the Plan so as to ensure that the Debtors' officers and directors are "held harmless" for any and all acts or omissions of the Liquidating Trust and/or Liquidating Trustee. Additionally, upon the Effective Date or as soon thereafter reasonably practicable, the Liquidating Trustee shall dissolve the Debtor entities.

ii.    Rejection and Assumption of Contracts

On the Effective Date, all executory contracts and unexpired leases will be deemed rejected by the Debtors unless such contracts or leases were either (a) expressly assumed by the Debtors prior to the Confirmation Date or (b) are the subject of a pending motion by the Debtors, as of the Confirmation Date, to assume. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Bankruptcy Code Section 365.

Any Claim for damages arising from rejection of any executory contract or unexpired lease pursuant to entry of an order approving the rejection of the applicable executory contract or unexpired lease (each, a "Rejection Damages Claim") shall be forever barred unless a proof of claim therefor in proper form is filed with the Bankruptcy Court within the later of: (i) the applicable Claims Bar Date or Government Bar Date or (ii) fifteen (15) days after the Bankruptcy Court's entry of the Confirmation Order or other order approving the rejection of the applicable executory contract or unexpired lease (the later of these dates, the "Rejection Damages Bar Date"). All such Claims shall constitute Class 3 Claims.

iii.    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

iv.    Successors and Assigns

The rights, duties and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

v.    Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable and such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and

provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

vi. No Waiver

The failure of the Debtors to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtors' or Liquidating Trustee's right to object to or examine such Claim, in whole or in part.

vii. Payment of Post-Petition Interest and Attorneys' Fees

Unless otherwise expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, the Debtors or the Liquidating Trustee shall not be required to pay to any holder of a Claim any interest accruing on or after the Petition Date or any attorneys' fees with respect to such Claim.

viii. Post-Effective Date Fees and Expenses

From and after the Effective Date, the Estate and/or the Liquidating Trustee shall, without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional Persons thereafter incurred by the Estate and/or the Liquidating Trustee related to the implementation and consummation of the Plan (i.e., fees and expenses that are not Administrative Claims — payment of Administrative Claims being dealt with elsewhere in the Plan). Such fees and expenses shall be paid within fifteen (15) days of the client's receipt of the applicable invoice, absent objection by the client.

ix. Final Decree and Case Closure

The Case shall remain open until the earlier of (a) the date on which all actions authorized under the Plan that are brought by the Liquidating Trustee are resolved and (b) the date on which the Liquidating Trustee determines that no actions will be brought by the Liquidating Trustee. In addition (i) a final decree shall be entered as soon as possible after final closing occurs under the Plan, and in no event shall such decree be applied for more than thirty (30) days after such closing and (ii) the entry of such final decree shall be without prejudice to the right or ability of the Liquidating Trustee to pursue the causes of action identified in Paragraph 10.3 of the Plan and the Confirmation Order shall provide for the same. In accordance with Bankruptcy Code Section 1129(a)(12) and 28 U.S.C. § 1930, all quarterly fees payable to the Office of the United States Trustee, including any interest due pursuant to 37 U.S.C. § 3717, shall be paid in full on or before their respective due dates and shall continue to be assessed and paid until such time as a final decree closing, converting or dismissing this Case is entered by the Bankruptcy Court. The Debtors and the Estate shall liable for payment of such quarterly fees during the period through and including the initial distribution made pursuant to the Plan and the Liquidating Trustee shall be liable for all other quarterly fees payable to the Office of the United States Trustee thereafter until the Case is closed, converted or dismissed. The Debtors or the Liquidating Trustee shall promptly file an application for a final decree with the Court to close the Case.

x. Post-Effective Date Effect of Evidences of Claims or Interests

Except as otherwise expressly provided in the Plan, notes, bonds, stock certificates and other evidences of Claims against or Interests in the Debtors shall, effective upon the Effective

~~Date, represent only the right to participate in the distributions contemplated by the Plan.~~

## VII. ~~RISK FACTORS~~

~~The holder of a Claim against or Interest in the Debtors should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein), before deciding whether to vote to accept or reject the Plan.~~

A. ~~General Considerations~~

~~The formulation of a plan is a principal purpose of a chapter 11 case. The Plan sets forth the means for satisfying the Claims against and Interests in the Debtors. Wind-down of the Debtors' remaining administrative operations and liquidation of assets under the proposed Plan and compromise with ORIX avoids the potentially adverse impact of a protracted and costly liquidation under chapter 7 of the Bankruptcy Code.~~

B. ~~Termination Rights Under Plan Support Agreement~~

~~The Debtors' ability to consummate the liquidation contemplated by the Plan is conditioned upon, among other things, satisfaction of the terms contained in the PSA, which contains certain conditions and termination rights.~~

i. Resignation of Officers and Directors and Dissolution of Debtors

Upon the Effective Date, all of the Debtors' officers and directors in office immediately prior to the Effective Date shall be deemed to have resigned from their positions with the Debtors (without the necessity of any further action or writing or Bankruptcy Court order) and shall have no further responsibilities, duties and obligations arising after the Effective Date. None of the Debtors' present officers or directors shall have any liability for the acts or omissions of the Litigation Trust, Litigation Trustee, Plan Trust or Plan Trustee. Additionally, upon the Effective Date or as soon thereafter reasonably practicable, the Litigation Trustee shall dissolve the Debtor entities.

ii. Rejection and Assumption of Contracts

On the Effective Date, all executory contracts and unexpired leases will be deemed rejected by the Debtors unless such contracts or leases were either (a) expressly assumed by the Debtors prior to the Confirmation Date or (b) are the subject of a pending motion by the Debtors, as of the Confirmation Date, to assume. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Bankruptcy Code Section 365.

Any Claim for damages arising from rejection of any executory contract or unexpired lease pursuant to entry of an order approving the rejection of the applicable executory contract or unexpired lease (each, a "Rejection Damages Claim") shall be forever barred unless a proof of claim therefor in proper form is filed with the Claims Agent within the later of: (i) the applicable Claims Bar Date or Government Bar Date or (ii) fifteen (15) days after the Bankruptcy Court's

entry of the Confirmation Order or other order approving the rejection of the applicable executory contract or unexpired lease (the later of these dates, the "Rejection Damages Bar Date") and otherwise in accordance with the provisions of the Bar Date Order. All such Claims shall constitute Class 3 Claims.

### iii.    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware.

### iv.    Successors and Assigns

The rights, duties and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

### v.    Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable and such term or provision shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

### vi.    No Waiver

The failure of the Debtors to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtors' or Litigation Trustee's right to object to or examine such Claim, in whole or in part.

### vii.    Payment of Post-Petition Interest and Attorneys' Fees

Unless otherwise expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, the Debtors, the Litigation Trustee or the Plan Trustee shall not be required to pay to any holder of a Claim any interest accruing on or after the Petition Date or any attorneys' fees with respect to such Claim, unless there are sufficient funds to pay holders of Allowed Class 3 Claims in full, in which case interest on such Allowed Class 3 Claims may be paid in accordance with the Bankruptcy Code and Paragraphs 10.7(f) and 12.2(f) of the Plan.

### viii.    Post-Effective Date Fees and Expenses

(a)     From and after the Effective Date, the Litigation Trustee shall, without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional Persons thereafter incurred by the Estate and/or the Litigation Trustee related to the implementation and consummation of the Plan (i.e., fees and expenses that are not Administrative Claims – payment of Administrative Claims being dealt with elsewhere in the Plan). Such fees and expenses shall be paid within fifteen (15) days of the Litigation Trustee's receipt of the applicable invoice, absent objection by the Litigation Trustee.

(b)     From and after the Effective Date, the Litigation Trustee shall, without necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Professional Persons after the Effective Date solely related to and in connection with the filing and allowance procedures in Paragraphs 4.2(b) and (c) of the Plan (i.e., fees and expenses that are not Administrative Claims – payment of Administrative Claims being dealt with elsewhere in the Plan). Such fees and expenses shall be paid within fifteen (15) days of the Litigation Trustee's receipt of the applicable invoice, absent objection by the Litigation Trustee.

(c)     From and after the Effective Date, the Plan Trustee shall, without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional Persons thereafter incurred by the Plan Trustee related to the implementation and consummation of the Plan (i.e., fees and expenses that are not Administrative Claims – payment of Administrative Claims being dealt with elsewhere in the Plan). Such fees and expenses shall be paid within fifteen (15) days of the Plan Trustee's receipt of the applicable invoice, absent objection by the Plan Trustee.

ix.     Final Decree and Case Closure

The Case shall remain open until the earlier of (a) the date on which all actions authorized under the Plan that are brought by the Litigation Trustee are resolved and (b) the date on which the Litigation Trustee determines that no actions will be brought or further distributions made by the Litigation Trustee. In addition (i) a final decree shall be entered as soon as possible after final closing occurs under the Plan, and in no event shall such decree be applied for more than thirty (30) days after such closing and (ii) the entry of such final decree shall be without prejudice to the right or ability of the Litigation Trustee to pursue the causes of action identified in Paragraph 10.3 of the Plan and the Confirmation Order shall provide for the same. In accordance with Bankruptcy Code Section 1129(a)(12) and 28 U.S.C. § 1930, all quarterly fees payable to the Office of the United States Trustee, including any interest due pursuant to 37 U.S.C. § 3717, shall be paid in full on or before their respective due dates and shall continue to be assessed and paid until such time as a final decree closing, converting or dismissing this Case is entered by the Bankruptcy Court. The Debtors and the Estate or the Litigation Trustee, as the case may be, shall be liable for payment of such quarterly fees during the period through and including the initial distribution made pursuant to the Plan and the Litigation Trustee shall be liable for all other quarterly fees payable to the Office of the United States Trustee thereafter until the Case is closed, converted or dismissed. The Debtors or the Litigation Trustee, as the case may be, shall promptly file an application for a final decree with the Court to close the Case.

x.     Post-Effective Date Effect of Evidences of Claims or Interests

Except as otherwise expressly provided in the Plan, notes, bonds, stock certificates and other evidences of Claims against or Interests in the Debtors shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan.

## VII.   RISK FACTORS

The holder of a Claim against or Interest in the Debtors should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein), before deciding whether to vote to accept or reject the Plan.

### A.   General Considerations

The formulation of a plan is a principal purpose of a chapter 11 case. The Plan sets forth the means for satisfying the Claims against and Interests in the Debtors. Wind-down of the Debtors' remaining administrative operations and liquidation of assets under the proposed Plan and compromise with ORIX avoids the potentially adverse impact of a protracted and costly liquidation under chapter 7 of the Bankruptcy Code.

### B.   Termination Rights Under Plan Support Agreement

The Debtors' ability to consummate the liquidation contemplated by the Plan is conditioned upon, among other things, satisfaction of the terms contained in the PSA, which contains certain conditions and termination rights.

ORIX is entitled to terminate the PSA if, among other things, (i) at the option of ORIX, if the Debtors are in material breach of any of their obligations under the PSA, and any such breach is not cured by the later of five (5) Business Days after receipt of written notice from ORIX, (ii) at the option of ORIX, if the Debtors file any motion or pleading with the Bankruptcy Court that is not consistent in any material respect with the PSA or the Plan, (iii) at the option of ORIX, if the Bankruptcy Court grants relief that is materially inconsistent with the PSA or the Plan and the Debtors fail to obtain the entry of one or more orders reconsidering, reversing or otherwise removing any Material Adverse Change caused by such grant within ten (10) Business Days thereof; (iv) at the option of ORIX, if the Debtors fail to ~~commence the Chapter 11 Cases on or before November 15, 2010; (v) at the option of ORIX, if the Debtors fail to~~ obtain entry of an order assuming the PSA as of ~~the date which is the later of thirty (30) days after the date (1) that an official committee of unsecured creditors is formed or (2) of the "Organizational Meeting" for the Chapter 11 Case~~February 1, ~~as such meeting may be postponed from time to time, that is announced on the website for the United States Trustee for the District of Delaware (http://www.justice.gov/ust/r03/wilmington/org_meeting.htm); (vi) at the option of ORIX, if the Debtors fail to retain on or prior to December 15, 2010, a Chief Restructuring Officer or a financial advisor reasonably acceptable to ORIX to serve as the Chief Restructuring Officer or financial advisor to the Debtors with respect to the Chapter 11 Case (although ORIX agrees that Argus Management Corporation is acceptable to ORIX as Chief Restructuring Officer or financial advisor for the Debtors); (vii~~2011; (v) at the option of ORIX, if the Debtors fail to obtain entry of an order confirming the Plan by March 31, 2011; (~~viii~~vi) at the option of ORIX, if

the Effective Date shall not have occurred by April 29, 2011; (~~ix~~vii) at the option of ORIX, if the Debtors move (1) to voluntarily dismiss the Chapter 11 Case, (2) for conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or (3) for appointment of a trustee or an examiner with expanded powers pursuant to Bankruptcy Code Section 1104 in the Chapter 11 Case; (~~x~~viii) at the option of ORIX, if (1) a trustee or an examiner with expanded powers is appointed in the Chapter 11 Case or (2) the Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code; (~~xi~~ix) at the option of the Debtors or ORIX, if any court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the Restructuring or confirmation or consummation of the Plan in a way that cannot reasonably be remedied by the Debtors or ORIX; (~~xii~~(x) at the option of ORIX, upon the occurrence of a Material Adverse Change; and (~~xiii~~xi) at the option of ORIX, if the Debtors withdraw the Plan or file, propose or otherwise support any plan of reorganization other than the Plan.

Upon termination, any prior vote of the Lender shall be immediately revoked and deemed void *ab initio*, which would substantially impede the Debtors ability to consummate the proposed liquidation.

## C.    Certain Bankruptcy Considerations

If the Plan is not confirmed and consummated, there can be no assurance that any alternative plan would be on terms as favorable to the holders of impaired Claims or Interests as the terms of the Plan. In addition, if a protracted liquidation were to occur, there is a substantial risk that holders of Claims and Interests would receive less than they will receive under the Plan.

## D.    Claims Estimations

There can be no assurance that the estimated Claim amounts set forth herein are correct, and the actual amount of Allowed Claims may differ from the estimates. The estimated amounts are subject to certain risks, uncertainties and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual amount of Allowed Claims may vary from those estimated herein.

## VIII.    **CONFIRMATION AND CONSUMMATION PROCEDURES**

## A.    Overview

A plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors and equity holders, and the obligations owed by the debtor to such parties are compromised and exchanged for the obligations specified in the plan. Before soliciting acceptances of the proposed plan, Bankruptcy Code Section 1125 requires the debtor to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical, reasonable investor to make an informed judgment about the plan. **This Disclosure Statement is presented to holders of Claims against and Interests in the Debtors to satisfy the**

requirements of Bankruptcy Code Section 1125 in connection with the Debtors' solicitation of votes on the Plan.

If all classes of claims and equity interests accept a plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of Bankruptcy Code Section 1129(a) have been satisfied. Bankruptcy Code Section 1129(a) sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests of creditors" test and be "feasible." The "best interests" test generally requires that the value of the consideration to be distributed to the holders of claims or equity interests under a plan may not be less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the bankruptcy court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization. **The Debtors believe that the Plan satisfies all the applicable requirements of Bankruptcy Code Section 1129(a), including, in particular, the best interests of creditors' test and the feasibility requirement.**

The Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a plan for the bankruptcy court to determine that the class has accepted the plan. Rather, a class of creditors will be determined to have accepted the plan if the bankruptcy court determines that the plan has been accepted by a majority in number and two-thirds in amount of those claims actually voting in such class. Similarly, a class of equity security holders will have accepted the plan if the bankruptcy court determines that the plan has been accepted by holders of two-thirds of the number of shares actually voting in such class.

In addition, classes of claims or equity interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. Accordingly, acceptances of a plan will generally be solicited only from those Persons who hold claims or equity interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights associated with the claims or equity interests of that class are modified in any way under the plan. Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity on the effective date of the plan. Except for Class 4 – Interests and Subordinated Equity Claims, which are unimpaired, the other classes of Claims and Interests are impaired under the Plan and are entitled to vote on the Plan.

The bankruptcy court also may confirm a plan even though fewer than all the classes of impaired claims and equity interests accept such plan. For a plan to be confirmed despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under Bankruptcy Code Section 1129(b), a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to

secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property from the estate, unless the senior class receives property having a value equal to the full amount of its allowed claim.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interest in such class.

The Plan has been structured so that it will satisfy the foregoing requirements as to any rejecting class of Claims or Interests, and can therefore be confirmed, if necessary, over the objection of any (but not all) classes of Claims or Interests.

B.     Confirmation of the Plan

i.     Elements of Bankruptcy Code Section 1129

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the conditions to confirmation under Bankruptcy Code Section 1129 are satisfied.

Such conditions include the following:

(a)     The Plan complies with the applicable provisions of the Bankruptcy Code.

(b)     Each of the Debtors has complied with the applicable provisions of the Bankruptcy Code.

(c)     The Plan has been proposed in good faith and not by any means proscribed by law.

(d)     Any payment made or promised by the Debtors or by an entity issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court; and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

(e)     The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtors or a successor to the Debtors under the Plan and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity holders and with public policy, and the Debtors have disclosed the identity of any insider that will be employed or retained by such Debtor, and the nature of any compensation for such insider.

(f)     With respect to each impaired class of Claims or Interests, each holder of an impaired Claim or impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of the Claims or Interests held by such entity, property of a value, as of the applicable consummation date under the Plan, that is not less than the amount that such entity would receive or retain if the Debtors were liquidated on such date under chapter 7 of the Bankruptcy Code.   In the event that the Debtors do not move to confirm the Plan non-consensually, each class of Claims or Interests entitled to vote has either accepted the Plan or is not impaired under the Plan.

(g)     Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Priority Claims will be paid in full on the applicable consummation date and that Tax Claims will be paid in full, in cash, on the applicable consummation date or as soon as practicable thereafter; however, the Debtors shall have the right to make deferred cash payments on account of such Tax Claims over a period not exceeding six (6) years after the date of assessment of such Claims, having a value, as of the applicable consummation date, equal to the allowed amount of such Claims.

(h)     At least one impaired class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such class.

(i)     Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any other successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

(j)     All fees payable under Bankruptcy Code Section 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

**The Debtors believe that the Plan will satisfy all the statutory provisions of chapter 11 of the Bankruptcy Code, that they have complied or will have complied with all of the provisions of the Bankruptcy Code and that the Plan is being proposed and will be submitted to the Bankruptcy Court in good faith.**

ii.     Acceptance

A class of Claims will have accepted the Plan if the Plan is accepted, with reference to a class of Claims, by at least two-thirds in amount and more than one-half in number of the Allowed Claims of each such class of Claims.  Each class of Interests will have accepted the Plan if the Plan is accepted with reference to a class of Interests, by at least two-thirds in amount of the Allowed Interests of each class of Interests.

iii.     Best Interests Test

With respect to each impaired class of holders of Claims and Interests, confirmation of the Plan requires that each such holder either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the applicable consummation date under the Plan, that is not less

than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

To determine what holders of Claims and Interests of each impaired class would receive if the Debtors were liquidated, the Bankruptcy Court must determine the proceeds that would be generated from the liquidation of the properties and interests in property of the Debtors in a chapter 7 liquidation case. The proceeds that would be available for satisfaction of Claims against and Interests in the Debtors would consist of the proceeds generated by disposition of the unencumbered equity in the properties and interests in property of the Debtors and the cash held by the Debtors at the time of the commencement of the liquidation case. Such proceeds would be reduced by the costs and expenses of the liquidation and by such additional administration and priority claims that may result from the termination of the administrative operations of the Debtors and the use of chapter 7 for the purposes of liquidation.

The costs of liquidation under chapter 7 of the Bankruptcy Code would include the fees payable to a trustee in bankruptcy, and the fees that would be payable to additional attorneys and other professionals that such a trustee may engage, plus any unpaid expenses incurred by the Debtors during the Chapter 11 Cases, such as compensation for attorneys, financial advisors, accountants and costs that are allowed in the chapter 7 case. In addition, Claims would arise by reason of the breach or rejection of obligations incurred and executory contracts entered into or assumed by the Debtors during the pendency of the Chapter 11 Cases.

The foregoing types of Claims and such other Claims which may arise in the liquidation cases or result from the pending Chapter 11 Cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay Claims arising on or before the Petition Date.

To determine if the Plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of the liquidation of the properties and interests in property of the Debtors (net of the amounts attributable to the aforesaid Claims) is then compared with the present value offered to such classes of Claims and Interests under the Plan.

In applying the "best interests" test, it is possible that Claims and Interests in the chapter 7 cases may not be classified according to the seniority of such Claims and Interests as provided in the Plan. In the absence of a contrary determination by the Bankruptcy Court, all Claims arising on or before the Petition Date which have the same rights upon liquidation would be treated as one class for the purposes of determining the potential distribution of the liquidation proceeds resulting from the chapter 7 cases of the Debtors. The distributions from the liquidation proceeds would be calculated ratably according to the amount of the Claim held by each creditor. Therefore, creditors who claim to be third-party beneficiaries of any contractual subordination provisions might have to seek to enforce such contractual subordination provisions in the Bankruptcy Court or otherwise. The Debtors believe that the most likely outcome of liquidation proceedings under chapter 7 would be the application of the rule of absolute priority of distributions. Under that rule, no junior creditor receives any distribution until all senior creditors are paid in full with interest, and no equityholder receives any distribution until all creditors are paid in full with interest.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Cases, including: (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee; (ii) the erosion in value of assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" environment in which such a liquidation would likely occur; and (iii) the substantial increases in claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Cases, the Debtors believe that confirmation of the Plan will provide each holder of a Claim or Interest with a greater recovery than it would receive pursuant to liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

iv.     Feasibility

The Bankruptcy Code conditions confirmation of a plan on, among other things, a finding that it is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor. Considering the Plan is a plan of liquidation this test is met for purposes of the Plan.

## C.     Cramdown

In the event that any impaired class does not accept the Plan, the Debtors nevertheless may move for confirmation of the Plan. To obtain such confirmation, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such classes and any other classes of Claims that vote to reject the Plan.

i.     No Unfair Discrimination

A plan "does not discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to the legal rights of the non-accepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Debtors believe that under the Plan all impaired classes of Claims and Interests are treated in a manner that is consistent with the treatment of other classes of Claims and Interests that are similarly situated, if any, and no class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims and Allowed Interests in such class. Accordingly, the Debtors believe the Plan does not discriminate unfairly as to any impaired class of Claims or Interests.

ii.     Fair and Equitable Test

The Bankruptcy Code establishes different "fair and equitable" tests for secured creditors, unsecured creditors and holders of equity interests as follows:

(a)     Secured Creditors. Either (i) each impaired secured creditor retains its liens securing its secured claim and it receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the indubitable equivalent of its allowed secured claim or (iii) the

property securing the claim is sold free and clear of liens, with such liens to attach to the proceeds and the treatment of such liens on proceeds as provided in clause (i) or (ii) of this subparagraph.

(b)    Unsecured Creditors.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan, subject to the applicability of the judicial doctrine of contributing new value.

(c)    Holders of Interests.  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock or (b) the value of the stock or (ii) the holders of interests that are junior to the stock will not receive any property under the plan of reorganization, subject to the applicability of the judicial doctrine of contributing new value.

THE DEBTORS MAY MOVE FOR CONFIRMATION OF THE PLAN IF LESS THAN THE REQUISITE HOLDERS OF CLAIMS OR INTERESTS IN ANY CLASS VOTE TO ACCEPT THE PLAN.

D.    Effect of Confirmation

Under Bankruptcy Code Section 1141, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equityholder, whether or not the claim or interest of such creditor or equityholder is impaired under the plan and whether or not such creditor or equityholder voted to accept the plan.  Further, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors and equityholders, except as otherwise provided in the plan or the confirmation order.

## IX.    INCOME TAX CONSIDERATIONS

EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH AN INDEPENDENT TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES, IF ANY, OF THE PLAN.

## X.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtors have evaluated alternatives to the Plan, including, without limitation, the liquidation of the Debtors under chapter 7 of the Bankruptcy Code and the liquidation of the Debtors under a "free-fall" chapter 11 plan.  After studying these alternatives, the Debtors have concluded that the Plan is the best alternative and will maximize recoveries of holders of Claims and Interests.  The following discussion provides a summary of the analysis of the Debtors supporting their conclusion that an alternative plan for the Debtors will not provide higher value to holders of Claims and Interests.

A.    Liquidation Under Chapter 7 of the Bankruptcy Code

If no plan of reorganization can be confirmed, the Chapter 11 Cases of the Debtors may be converted to cases under chapter 7, in which event a trustee would be elected or appointed to liquidate the properties and interests in property of the Debtors for distribution to their creditors in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for under the Plan because of (1) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee for bankruptcy and professional advisors to such trustee; (2) the erosion in value of assets in the context of the expeditious liquidation required under chapter 7 and the "forced sale" environment in which such a liquidation would likely occur; and (3) the substantial increases in claims which would have to be satisfied on a priority basis or on parity with creditors in the Chapter 11 Cases. Accordingly, the Debtors believe that confirmation of the Plan will provide each holder of a Claim or Interest with a greater recovery than it would receive pursuant to liquidation of the Debtors under chapter 7.

B.    Alternative Plans

If the Plan is not confirmed, any other party-in-interest could undertake to formulate a different plan. Such a plan would naturally involve a liquidation of the properties and interests in property of the Debtors. With respect to an alternative plan, the Debtors have examined various other alternatives in connection with the process involved in the formulation and development of the Plan. The Debtors believe that the Plan, as described herein, enables holders of Claims and Interests to realize the best recoveries under the present circumstances.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

# XI.   CONCLUSION

The Debtors believe that the Plan is in the best interest of all holders of Claims and Interests, and urge all holders of impaired Claims against and Interests in the Debtors to vote to accept the Plan and to evidence such acceptance by returning their ballots in accordance with the instructions accompanying the Disclosure Statement.

Dated: ~~November 8~~January 18, ~~2010~~ 2011

> Respectfully submitted,
>
> HMP Services Holding Sub III, LLC and
> HMP Services Holding, Inc.
>
>
> By: _____
> Name: ~~John G. Haggerty~~Peter Sullivan
> Title:   ~~Chief~~Assistant Restructuring Officer

# EXHIBIT A

# DEBTORS' JOINT PLAN OF LIQUIDATION

## EXHIBIT B

## DISCLOSURE STATEMENT ORDER

[To be filed with the Bankruptcy Court before the hearing on the Disclosure Statement.]

# EXHIBIT C

## GLOSSARY OF DEFINED TERMS

1.    <u>Administrative Bar Date</u> has the meaning ascribed to it in the Plan and Article VI.A of the Disclosure Statement.

2.    <u>Administrative Claim</u> has the meaning ascribed to it in the Plan.

3.    <u>Agfa</u> has the meaning ascribed to it in Article IV.C of the Disclosure Statement.

4.    <u>Allowed Claim</u> has the meaning ascribed to it in the Plan.

5.    <u>Amended Schedules Bar Date</u> has the meaning ascribed to it in the Bar Date Order.

6.    <u>APA</u> has the meaning ascribed to it in the Plan and Article IV.C of the Disclosure Statement.

7.    <u>APA Holdback Amount</u> has the meaning ascribed to it in the Plan.

8.    <u>Avoidance Claims</u> has the meaning ascribed to it in the Plan ~~and Article VI.B of the Disclosure Statement~~.

9.    <u>Bankruptcy Code</u> has the meaning ascribed to it in the Plan.

10.    <u>Bankruptcy Code Section</u> has the meaning ascribed to it in the Plan.

11.    <u>Bankruptcy Court</u> has the meaning ascribed to it in the Plan.

12.    <u>Bankruptcy Rules</u> has the meaning ascribed to it in the Plan.

13.    <u>Bar Date Order</u> has the meaning ascribed to it in the Plan.

14.    <u>Business Day</u> has the meaning ascribed to it in the Plan.

15.    <u>Case</u> or <u>Chapter 11 Case</u> has the meaning ascribed to it in the Plan.

16.    <u>Cash</u> has the meaning ascribed to it in the Plan.

17.    <u>Charrette</u> has the meaning ascribed to it in Article IV.B of the Disclosure Statement.

18.    <u>Claim</u> has the meaning ascribed to it in the Plan.

<u>19.</u>    <u>Claims Agent has the meaning ascribed to it in the Plan.</u>

<u>20.</u>    ~~19.~~<u>Claims Bar Date</u> has the meaning ascribed to it in the Plan.

21. 20.Claims Objection Bar Date has the meaning ascribed to it in the Plan and Article V.E V.F of the Disclosure Statement.

22. 21.Class has the meaning ascribed to it in the Plan.

23. 22.Closing Date has the meaning ascribed to it in Article IV.C of the Disclosure Statement.

24. 23.Collateral has the meaning ascribed to it in the Plan.

25. 24.Commercial Tort Claims has the meaning ascribed to it in the Plan.

26. 25.Committee has the meaning ascribed to it in the Plan.

27. 26.Company has the meaning ascribed to it in the Introduction of the Disclosure Statement.

28. 27.Confirmation Date has the meaning ascribed to it in the Plan.

29. 28.Confirmation Hearing has the meaning ascribed to it in the Plan.

30. 29.Confirmation Order has the meaning ascribed to it in the Plan.

31. 30.Credit Agreement has the meaning ascribed to it in the Plan and Article IV.B of the Disclosure Statement.

32. 31.Debtors has the meaning ascribed to it in the Plan and in the Introduction of the Disclosure Statement.

33. 32.Deferred Compensation Claims has the meaning ascribed to it in Article IV.B of the Disclosure Statement.

34. 33.Disclosure Statement has the meaning ascribed to it in the Plan.

35. 34.Disclosure Statement Order is the order approving the Disclosure Statement as entered by the Bankruptcy Court in the form substantially as attached as **Exhibit B** to the Disclosure Statement.

36. 35.Disputed Cash Collateral has the meaning ascribed to it in Article V.B of the Disclosure Statement.

37. 36.Disputed Cash Collateral Account has the meaning ascribed to it in the Plan.

38. 37.Disputed Claim has the meaning ascribed to it in the Plan.

39. 38.Effective Date has the meaning ascribed to it in the Plan.

40. 39.Employee Claims has the meaning ascribed to it in Article IV.B of the Disclosure Statement.

41. 40.Escrow Agreement has the meaning ascribed to it in the Plan.

42. ESOP and 401(k) Plan has the meaning ascribed to it in the Plan.

43. 41.Estate has the meaning ascribed to it in the Plan.

44. 42.Excluded Assets has the meaning ascribed to it in Article IV.C of the Disclosure Statement.

45. 43.Exculpated Person has the meaning ascribed to it in the Plan and Article ~~VI.F~~ VI.H of the Disclosure Statement.

46. 44.Final Order has the meaning ascribed to it in the Plan.

47. 45.Filing Period has the meaning ascribed to it in Article II.A in the Disclosure Statement.

48. First Agreement has the meaning ascribed to it in Article IV.C of the Disclosure Statement.

49. 46.First Day Pleadings are such pleadings as described in Article V.B of the Disclosure Statement.

50. First Plan has the meaning ascribed to it in Article IV.C of the Disclosure Statement.

51. 47.General Unsecured Claims has the meaning ascribed to it in the Plan.

52. 48.Government Bar Date has the meaning ascribed to it in the Plan.

53. 49.Health Insurance Overage Amount has the meaning ascribed to it in the Plan.

54. Information has the meaning ascribed to it in the Plan.

55. 50.Interest has the meaning ascribed to it in the Plan.

56. 51.Landlord Claims has the meaning ascribed to it in Article IV.B of the Disclosure Statement.

57. 52.Lender or ORIX has the meaning ascribed to it in the Plan and Article IV.B of the Disclosure Statement.

58. 53.Lender Claim has the meaning ascribed to it in the Plan.

59. 54.Lender Deficiency Claim has the meaning ascribed to it in the Plan.

60. Lender Proceeds has the meaning ascribed to it in the Plan.

61. Lender Reserve Amount has the meaning ascribed to it in the Plan and Articles III.A and VI.A of the Disclosure Statement.

62. ~~55.~~Lender Secured Claim has the meaning ascribed to it in the Plan.

63. ~~56.Liquidating~~ Litigation Trust has the meaning ascribed to it in the Plan and Article VI.B of the Disclosure Statement.

~~57.Liquidating Trust Agreement has the meaning ascribed to it in the Plan.~~

64. Litigation Trust Agreement has the meaning ascribed to it in the Plan.

65. Litigation ~~58. Liquidating~~ Trust Assets has the meaning ascribed to it in the Plan.

66. ~~59.Liquidating~~ Litigation Trustee has the meaning ascribed to it in the Plan.

67. ~~60.~~Local Rules has the meaning ascribed to it in the Plan.

68. ~~61.~~Material Adverse Change means any change, effect, event, occurrence, development, circumstance or state of facts occurs which has had or would reasonably be expected to (i) have a materially adverse effect on the Company's ability to perform its obligations under the PSA and the Plan or (ii) have a materially adverse effect on or prevent or materially delay the consummation of the transactions contemplated by the PSA or (iii) have a materially adverse effect on the rights of ORIX under the PSA or the Plan. The filing of a voluntary petition commencing the Chapter 11 Case contemplated by the PSA shall not constitute a Material Adverse Change.

~~62. Miscellaneous Collateral Proceeds has the meaning ascribed to it in the Plan.~~

~~63.Miscellaneous Non-Collateral Proceeds has the meaning ascribed to it in the Plan.~~

69. ~~64.~~Non-Collateral has the meaning ascribed to it in the Plan and Article IV.C of the Disclosure Statement.

70. ~~65.~~Non-Lender Proceeds has the meaning ascribed to it in the Plan.

71. ~~66.~~Notice of Confirmation has the meaning ascribed to it in the Plan.

72. ~~67.~~Office of the United States Trustee has the meaning ascribed to it in the Plan.

73. ~~68.~~Officers has the meaning ascribed to it in Article V.B of the Disclosure Statement.

74. Official Committee has the meaning ascribed to it in Article V.C of the Disclosure Statement.

75. ~~69.~~Paragraph has the meaning ascribed to it in the Plan.

76. ~~70.~~Person has the meaning ascribed to it in the Plan.

77. ~~71.~~Petition Date has the meaning ascribed to it in the Plan.

78. ~~72.~~Plan has the meaning ascribed to it in the Plan.

79. ~~73.~~Plan Distribution Date has the meaning ascribed to it in the Plan.

80. ~~74.~~Plan Support Agreement or PSA has the meaning ascribed to it in Article IV.C of the Disclosure Statement.

81. Plan Trust has the meaning ascribed to it in the Plan.

82. Plan Trust Agreement has the meaning ascribed to it in the Plan.

83. Plan Trust Assets has the meaning ascribed to it in the Plan.

84. Plan Trustee has the meaning ascribed to it in the Plan.

85. Plea has the meaning ascribed to it in the Plan.

86. ~~75.~~Preference Claims has the meaning ascribed to it in Article IV.B of the Disclosure Statement.

87. ~~76.~~Priority Claim has the meaning ascribed to it in the Plan.

88. ~~77.~~Professionals has the meaning ascribed to it in Article V.B of the Disclosure Statement.

89. ~~78.~~Professional Fee Application has the meaning ascribed to it in the Plan.

90. ~~79.~~Professional Fee Claim has the meaning ascribed to it in the Plan and Article VI.A of the Disclosure Statement.

91. ~~80.~~Professional Fee Claim Bar Date has the meaning ascribed to it in the Plan and Article VI.A of the Disclosure Statement.

92. ~~81.~~Professional Person has the meaning ascribed to it in the Plan.

93. ~~82.~~Pro Rata has the meaning ascribed to it in the Plan.

94. ~~83.~~Rejection Damages Bar Date has the meaning ascribed to it in the Plan and Article ~~VI.J~~ VI.L of the Disclosure Statement.

95. ~~84.~~Rejection Damages Claim has the meaning ascribed to it in the Plan and Article ~~VI.J~~ VI.L of the Disclosure Statement.

96. ~~85.~~Renaissance Plan has the meaning ascribed to it in Article IV.B of the Disclosure Statement.

97.    86.Residual Cash has the meaning ascribed to it in the Plan.

98.    87.Restructuring has the meaning ascribed to it in Article IV.C of the Disclosure Statement.

99.    88.Sale has the meaning ascribed to it in Article IV.C of the Disclosure Statement.

100.    89.Schedules has the meaning ascribed to it in the Plan.

101.    90.Secured Claims has the meaning ascribed to it in the Plan.

102.    91.Solicitation Agent has the meaning ascribed to it in Article I of the Disclosure Statement.

103.    92.Solicitation Period has the meaning ascribed to it in Article II.A in the Disclosure Statement.

104.    93.Subordinated Equity Claims has the meaning ascribed to it in the Plan.

105.    94.Tax has the meaning ascribed to it in the Plan.

106.    95.Tax Refund has the meaning ascribed to it in the Plan.

107.    Third Party Claims has the meaning ascribed to it in the Plan.

108.    96.Unclaimed Property has the meaning ascribed to it in the Plan.

109.    97.Unsecured Claims has the meaning ascribed to it in Article IV.B of the Disclosure Statement.

110.    98.Vendor Claims has the meaning ascribed to it in Article IV.B of the Disclosure Statement.

111.    99.Voting Deadline means the deadline for voting on the Plan, as established by order of the Bankruptcy Court.

112.    100.Other Terms.  Terms defined in the Bankruptcy Code but not defined above have the same meaning as defined in the Bankruptcy Code.